April IT. The judges delivered their opinion seriatim.*
Judge Coalter :
The great question which has been agitated in this rase, is one which I shall not now consider at large, inasmuch as, with a bare and divided court, that question cannot be put to rest. My opinion, at present, however, is, that a party cannot come into a court of equity, for final relief as to the debt itself, on the ground of usury, and in that court claim a forfeiture of the money actually borrowed. Every case for relief in that court, must be tried on bill and answer ; that is to say, the plaintiff cannot claim a right to try the case, without an answer, so as to deprive the defendant of his defence in that way$ and consequently, every case of this kind must be brought under the section of the act of assembly doing away the penalties, so as to authorise the suit. For, without the benefit of that section, the defendant may demur, because he is not bound to answer, and dismiss the bill, so far as it claims relief on the ground of usury.
It is not necessary, to entitle the plaintiff to relief under that section, that he should rely altogether on the oath of the defendant. If he is obliged to shape his bill in that way, it must be because be is not at liberty, when *179 lie comes in under that section, to prove the usury; but surely he is at liberty, if it is denied, to prove the usury, and have relief according to that act.
The rase of Marks and Morris.(i) was one or apeculiar nature, and rendered necessary in order to prevent those new-fangled judgment bonds, as, in this respect they are aptly described, from being used so as to defeat the statute. This court has not considered itseif justified in, considering these instruments as mortgages generally j but, surely it will not disturb titles, or be productive of any general mischief, if the court should so consider them, in all cases where usury is alledged ; and should encourage trustees not to execute them, where a court of equity would not, if applied to; and if they are proceeding, to stop them, so as to oblige the party either to go to law, or to apply to equity, to have the trust executed. No court would reprobate the conduct of a trustee, in refusing to execute such trust, if he was satisfied, by sufficient affidavit or otherwise, that usury was attempted to be covered by the transaction; and that the party, if he had an opportunity, could prove it. On these principles, which I shall not now dilate on, 1 think that case can be supported ; otherwise, that it is not law. I was satisfied with that decision on these principles, and still am satisfied with it, but no further.
In this case, however, although the plaintiffs, in their second bill, say they can prove the usury, they nevertheless call for an answer, and except because that charge is not answered to. I think they had a right to that answer, and that the order overruling the exception is erroneous.
The title to relief in this case, so far as the unlawful gain and interest, should the usury he confessed or proved, and which 1 think is all the relief which can he given, did not in my opinion justify the injunction, even if that *180 §a*n was as Iarge as is alledged in the bill; because, the money admitted to have been borrowed, together with the bona fide debts, amounted to as much or more than the land sold for; and if that charge should not be made out at a]jf or no|. ^|ie extent claimed, and as the party gave no additional security, it shews a fortiori, that the appellees were entitled to possession, in order to keep down the interest, pending any controversy as to the propriety of the sale. As the injunction, therefore, ought never to have been granted, I think the dissolution of it, at least so far as it has gone, is correct and must be affirmed. Even if that dissolution goes so far as to confirm the sale, I am inclined to think it is right; because if any loss accrued by forbiding that sale, the appellant may more properly charge that to himself, than to the other party. However, the appellees alledge that such is not the effect of the decree. Understanding it therefore in this way, I can have no hesitation in affirming it in ¡fofo. The order overruling the exception to the answer, however, must be reversed$ but, as the appellees who are bona fide creditors, have no interest in that, and as the injunction was improvidently awarded, and might well have been dissolved as to all the parties, the appellants must pay costs.
Judge Brooke :
Although this case was re-argued before a full court, yet as one of the judges deems it improper, that he should decide it, and as of consequence, no principle is to be settled by the decision of it, I shall abstain from assigning my reasons at large for the opinion I shall deliver.
The bill is somewhat like the bill filed in the case of Marks and Morris,(j) but is susceptible of a different construction $ and as the plaintiff has assigned a different *181 meaning to it, by excepting to the answer of King, on the ground that it does not respond to the charge of usury, I think the chancellor was too strict in overruling that „ i » ■ exception, and that he was premature in dissolving the injunction, and directing the payment of a portion of the money to the innocent creditors; thereby ratifying a sale, which, upon the amended answer of King, may turn out to have been made under an usurious deed of trust. As to him, therefore, so much of the decree as directs the payment of the money to the creditors aforesaid, I think ought to be reversed, and the residue which puts them into the possession of the land, ought to be affirmed.
Judge Roane :
The hill in this case states, that so much of the debt secured by the deed of trust, as was due to King, was founded on an usurious contract, “ and which the complainants will be fully able to prove by disinterested testimony.” It prays that the said King and others may be made defendants, and “ compelled to answerthat they may be injoined from dispossessing the complainants, under a judgment upon a warrant of forcible detainer, that the debt due to King may be decreed to be void, and the complainants and their property discharged therefrom, and for further relief.
The bill in the case of Marks vs. Morris was substantially similar to the one before us. After stating that the consideration of the deed of trust, in that case, was an usurious loan of money, and that the contract was made in the presence of, and “ could be proved by a particular witness ” who is named in the bill, the hill prays a relief similar to that now in question, and that the defendant «« might true answer make to the several allegations thereof.” In neither of these bills is there any proffer to pay the principal money, as provided by the 3rd section of the act of usury.
*182 These two bilk) are therefore precisely alike, both as to the averment that the usury could be proved by testimony other than the answer of the defendant, and as to the general prayer contained therein, perhaps in common with all jj.jjg of eqU¡j;y> that the defendants might answer the allegations thereofand I have no doubt, but that the averment in this case, before mentioned, was thrown into the bill, in consequence of the decision of the court in the case of Marks vs. Morris. It was solemnly settled by the court in that case, that while this averment, and the nonexistence of any proffer of the principal money as aforesaid, withdrew the bill from the operation of the 3rd section of the act of usury, the general prayer before mentioned did not include it. These circumstances, it was also decided, absolved the defendant from the necessity of discovering the usury in that case, under the section aforesaid. If, therefore, it should be considered, that he was nevertheless compellable to make such disclosure, it can only be in consequence of principles ulterior to, and independent of, the provision of that section. Let us inquire whether there be any such principles, in the case before us.
As to the discovery now called for, while in relation to a hill coming within the 3rd section aforesaid, the defendant is in all cases bound to make it, upon the terms and conditions therein provided, he may refuse to make it, in relation to all bills not so comprehended. In this country, prior to the enaction of that section in the year 1734,(k) and in England, even up to the present day, if such discovery had been called for, it might have been demurred to, on the ground that it would subject the defendant to the particular penalties and forfeitures, denounced by the act of usury $ and that demurrer would have heen sustained, unless the plaintiff could shew that he, alone, was entitled to those penalties, and offered, by his bill, to waive them.(l) This was the case on the ground of *183 general principles of equity, and independently of the provisions of any statute. But, as the penalties in the case of usury went to the King and the informer, were not vested in the plaintiff, nor emikl be released by him, a disclosure of the fact by the answer, could not have been ohtained in any case ; and the right to sucli disclosure, on the part of the plaintiff, was consequently a mere non-entity ,• it in fact had no real existence. Yet as usury was generally practised in secret, and there was no other evidence of it than that of the usurer himself, this was a case which was deemed to require legislative interposition. It required at least the power of the legislature, to release forfeitures which enured to the benefit of, and were, perhaps, vested in others, and to adjust the terms on which the requisite discovery should he made. But the legislature would not go beyond the actual exigency of the case. It would not invade and release these vested rights, nor relax the statutory restraints established by law against the perpetration of usury, without necessity. It would not interfere, nor lias it interfered, in cases in which no discovery from the defendant was needed. It would not carry the provision of the law beyond the actual mischief which called for it. Accordingly we find that in the case of Marks vs. Morris, this court expressly limited this 3rd section to the specified case of a plaintiff having no other evidence of the usury than the oath of the defendant, and even hunted up the statute to the preamble of the original act on this subject, to shew more clearly, that this was the only mischief that was intended to be remedied, or which required the legislative interposition,
If, therefore, the defendant is compellable to make the disclosure in this case, it is not in virtue of the provision in the 3rd section aforesaid, but on a ground ulterior to, and distinct from it. I have but little doubt, that the legislature meant by that section, to cover the whole ground on the subject of a discovery, and to shelter a defendant from a discovery in all cases, not coming within its scope»
*184 If so, the defendant stands absolved from the necessity of answering, in this particular, by the actual provisions of the statute. But, if this should even be otherwise, he stands so absolved, by virtue of the general principles of eqU|ty before mentioned, and under the known inability of the plaintiff to offer (as he has failed to offer in this case) to release the penalties denounced by the act of usury. So that, quacunque via data, the defendant was not bound to answer to the usury in this case; and the decree of the chancellor overruling the appellants’ exception for want of such answer was entirely correct.
But, it is said or conceded by the plan of a decree, draughted and proposed by one of the other judges, that admitting that the bill as it before stood did not legally require an answer, from the defendant, in this particular, yet as the plaintiff explains his intention to be otherwise, by the exception he took to the answer for not responding to the charge of usury, this bill is to be consequently considered, thereafter, as a bill requiring such answer. In other words, that plan seems to assume, that this exception has the effect of amending the bill in this particular. I had thought, on the contrary, that it was the part and province of the bill, to limit and control the extent of the exception, and that the latter must succumb, and conform to the former. I had not supposed, that the exception could limit, enlarge or amend, the actual charges contained in the bill; with the single exception perhaps, that if an exception of that character is made, and is sustained, by the court, the party makingit would be concluded from setting up an objection to it on this ground. Where such exception is overruled, however, as is the case before us, the defendant is not precluded from relying on the judgment in his favor. He is not concluded from averring, that the exception was unwarranted. He is not concluded from resisting any exception, and relying on a judgment overruling it, which seeks to subject him to a disclosure, which he is not compellable, by law, to make. All the *185 hooks say that an amendment of a bill can only be made by the court, upon motion, and generally upon the payment of costs; whereas the effect of the pretensión in question, would be, to make such amendment not only without a motion, but without the payment of costs, and in direct contravention of the 79th section of the chancery law, in this particular. An exception, on the contrary, so far from purporting or affecting to be an amendment, changing a hill, relies on it as it is, and goes by the precise charges stated in it. In point of form, it even states and sets out “ such parts of the bill,” as the plaintiff conceives have not been answered, and prays that an answer may he given thereto, that is, to the bill as so set out, and previously existing.(m) Had the exception in this case been drawn out and extended, it would more clearly have shewn, that however the counsel might therein have misconceived, or departed from, the actual allegations and charges of the bill, as to their legal effect or operation, there was no intention on Ms part to alter those charges, as existing in the bill; charges, which so far from being changed by any order of the court, or even any act of the plaintiffs, are repeated, kept up, and set out in the plaintiff’s exception itself. Besides, it must not be forgotten, that if the exception to the answer, in this case, had been sustained, the court would have overruled an answer which was clearly correct and unexceptionable at the time it was put in ; and have subjected the defendant, nevertheless, to the payment of costs | which in such cases are to be paid by the defendant, under the 90th section of the chancery law. It would have had this effect too, by means of matter entirely ex post facto : which arose posterior to the filing of the answer ; which existed .only in the will of the plaintiffs, and would have invested them with the enormous and unprecedented power, of making the answer good or bad at their pleasure. It would have condemned an answer as *186 being alwaijs bad, for not responding to a particular charge, now for the first time alledged to be contained in the bill ; when as at the time that answer was filed, and in relation to which time it ought to be judged, it is confessR(] there was no semblance of a charge in the bill, making a further answer necessary.
The chancellor could, therefore, have given no other legal decision upon this exception, without injury to the defendant King j and on the contrary, the only just complaint on the part of the plaintiffs is against themselves. They can at most only regret that they did not, in fact, so frame their bill as to require a discovery of the usury, and call for a different decision from the court.
No usury is, therefore, confessed in this case, nor was the defendant compellable to confess it. But it was argued by the appellants, that such a confession is to be inferred from the silence of the answer in this particular; on the authority of the case of Scott vs. Gibbon,(n) in this court. I have examined that case, and do not find that that broad doctrine is at all established by it. Only one of the judges (judge Coalter) said any thing which could countenance such an idea. All that is said by the court seeming like it, is, that it was “ conceded” that the deed was executed prior to the marriage; but it does not follow, that in the opinion of the court, that concession was grounded on the silence of the defendant’s answer, in this particular. On the contrary, that fact might have been conceded at the bar; or, more probably, it was inferred by the court to be conceded by various provisions com-prized in the deed itself, from the circumstance that the date of the deed was anterior to the time of the marriage, and from the female appellant being called therein, Mary Davis, and not Mary Scott, as she was, and would have been, called, after the marriage. Be that however, as it may, the court certainly has not grounded the concession it mentions, upon the mere silence of the answer, only.
*187 The usury as to King’s debt (tiie only usury ¡hat is pretended) is not only not confessed, therefore, as aforesaid, but neither is it proved; the consequence is, that the decree is erroneous and injurious to King in not dissolving the injunction as to him, and it ought to be so far reversed in his favor.
This view of the subject would have made if unnecessary for me to say any thing as to the relief which is to be given, in the case of a decree rendered upon the proofs in the cau.se, and in exclusion of the answer of the defendant, had it not been for a clause in the proposed decree, seeming to leave the matter, at least, in doubt. That plan at least forbears positively to decide, whether it is competent to a plaintiff to file a bill for relief against usury, in that bill to dispense with the answer of the defendant touching the same, and yet go on upon the proofs to get relief. I trust I have shewn that it is competent to a plaintiff to dispense with the answer, so far as it depends on his coercion, in such a case, and this plaintiff’ has, in fact, done so. He has done so, by not bringing his bill within the provision of the 3rd section of the act against usury. Yet he is not to be deprived of his relief, if, upon the proofs, he shews himself to be entitled to it. In such case, the cause proceeds and goes on, as to all the parts of the bill, except those which the defendant is excused, at his own election, from answering. It proceeds as to the charge that there is usury in the transaction, although it is arrested as to so much of that charge, as relates to a discovery of the fact from the defendant. But at any rate, if there should be supposed to be a defect of an issue as to the usury itself, for want of a discovery of that fact by the defendant, an issue on that point ought to be directed. Thus we are told(o) that a party shall not protect himself against relief, by alledging that if he answer be must subject himself to penalties or forfeitures: for *188 that although the court cannot subject him thereto, by means of his own oath, yet it will entertain jurisdiction for relief3 and therefore, on a demurrer to a bill, ? suggesting a forgery of the deeds, the court directed an ¿ssue -£0 try whether they were forged or not,(p) I am inclined to think under the practice in this country, at least, this issue is entirely superfluous and unnecessary j and that the question of usury would be considered as substantially put in issue, quoad the proofs, existing in the cause 3 and from which charge, the defendant only withdrew himself, so far as relates to his own answer, by availing himself of a privilege existing in his own favor. Be this however, as it may, it is certain that in some mode, relief in such cases is to he obtained 3 and that, that which, at most, is to be considered as a demurrer to a part of a bill, cannot, by a contrary course, be converted, at the pleasure of the defendant, into a demurrer to the whole bill.
For these reasons, I can by no means agree to the plan of a decree which has been proposed. I cannot for a moment doubt with that plan, whether it is competent for the plaintiff to dispense (as in this case he has dispensed) with the answer of the defendant, as to the alledged usury, and yet go on upon the proofs to get a decree against him. This is not to be complained of on the part of the defendant, because although it is competent to the plaintiff to decline coercing his answer, the defendant may yet give it in, if he pleases. I cannot doubt, but that this relief is to be obtained, either in the usual mode, or at least by means of an issue as above is stated. I cannot concur with the plan aforesaid, that the appellants have done any thing in this case, which has legally retracted the dispensation originally contained in their bill, or has legally amended their bill in this particular. I cannot agree to so much of that plan, as seems to admit that King’s answer ought yet to come in. Such an answer ought not to be coerced *189 in this case, for the reasons I have already assigned, until the character of the bill should be essentially changed, Nor can l agree with that plan, to revise an order overruling an exception of the plaintiifs, which their own bill prohibited and estopped them from making; which order too only sustained an answer which was strictly correct and proper at the time, and is yet entirely proper, in relation to the actual character of the bill before us.
My opinion therefore would be, to reverse the decree, to dissolve so much of the injunction as relates to King, and suspends the collection and payment to him of his portion of the sales of the land in question, and affirm it for the residue. I would so decide, because usury as to him being neither confessed nor proved in the cause, his, also, as it at present appears, is a just and valid debt; but on this reversal, although made on the appeal of the other party, King should be allowed his costs, as the party substantially prevailing.
With respect to the particular measure of relief which, in a case like this, is to be afforded, it will be time enough, in my opinion, to settle that matter, when a case shall occur, in which the usury shall be established. Then too, we may possibly have a fuller court. The question is very important; and its importance is enhanced by the circumstance, that the counsel have arrayed two of the decisions of this court against each other. It therefore demands and ought to receive an insulated and solemn consideration. I beg that it may be distinctly understood that I have no settled and conclusive opinion either way, upon the subject. I wish to be left entirely free upon it, as I shall hereafter determine; any thing in the decisions aforesaid, to the contrary notwithstanding. As for those decisions, my impression was, that in deciding the case of Marks vs. Morris, the clear opinion of the court was, that no part of the sum borrowed was to be paid, as the price of relief, except the plaintiff brought himself within the provision of the 3rd section of the act of usury; and *190 that opinion was not abandoned, by stating and relying, in the decision of the court, upon the perhaps stronger - case of a deed of trust, which was the case then before the * court. That case too was very solemnly considered upon j.jie p0jnj. now immediately in question. While I am found, to have also concurred jn rendering the decree in the case of Stone vs. Ware,(q) and may, hereafter, adhere to the opinion which seems, as to this point, to have been declared in it, I am not at present entirely satisfied with that decision, and wish for a further consideration of it. I wish a point to be reconsidered and solemnly settled by a fuller court, on which I not only doubt as'aforesaid, but which is so radical and important, as, if adhered to, pursuant to that decision, goes a great way to repeal the salutary provisions of the act of usury. With respect to the case of Stone vs. Ware, I regret to find that it has been pressed upon us, as a conclusive and binding authority. It is well known that I have often expressed my doubts of its correctness, on this point, in conference and elsewhere. I must always be left as free to suspend or retract my opinions, which are believed to be doubtful or erroneous, as to declare them in the first instance. Having doubts, at this time, of the correctness of that decision, I must be permitted to withdraw my concurrence therein, at least for a time; and I do withdraw it accordingly. That withdrawal leaves it to stand, at most, upon the decisions of two judges, and thus deprives it, for a while, of its power to settle the law upon the subject. I have a distinct recollection, that that case was not so much considered on this point, as that of Marks and Morris; and that it passed towards the end of a term, amid a great mass of other business. I have also a vague impression, that it received the entire assent of only one of the judges. Be that however as it may, the report itself shews, that while that case was decided somewhat more at large upon the princi *191 pal question, only a single sentence or dictum is devoted by the court, to this subject of the measure of relief.
On the new hearing, which shall be given of this question hereafter, I wish it to be maturely considered, whether a principle as to the measure of relief, which in England is said to be universal, (in which country there is no statutory provision on the subject,) is to be considered equally universal here, where that subject has been taken up and acted upon, by the legislature l Whether the act alluded to, did not mean to repeal that principle, so far as it is ulterior to the actual provision, made by the 3rd section of it ? And whether that section does not comprize the full extent of the legislavive will, as to the compensation to be made, in cases of usury ? I wish if to be well considered, whether that is a sound and natural construction on the subject, which compels a plaintiff who wants mo aid from the defendant, and receives none from him, to pay a higher premium for his relief, than one who is solely dependent on the defendant for his testimony, arsd only grounds his recovery, upon the evidence coerced from him i I wish it to be considered, whether the plaintiff can avail himself, in this country, of the highly objectionable principle of “ all and some,” from the benefit of which principle he is excluded in England, by the non-existence of any statute whatsoever, on the subject of compensation ? I wish it to be considered, whether an offence which is reprobated by our laws, and is highly detrimental to the best interests of the community, should be almost invited by a construction which imposes on the usurer, only the paltry loss of the usurious interest ? I wish to know, whether a contract which is doubly reprobated, should, by that clause in our act, which declares -all usurious contracts to be utterly void, and secondly by the want of that free will, which, on general principles, is held to be essential to the validity of all contracts, and which the party borrowing, is now held to be deprived of, by reason of the duress of his situation, is yet. to he set *192 Up and carried into effect, as to all but the paltry pittance of the usurious interest ? I wish it to be considered, whether a principle (admitting it were not controlled by any statute,) is still to be kept up and acted upon, now that t],e borrower is held to be deserving of compassion, which was settled in England at a time when he was held to be equally guilty with the usurer ? And whether the same severe necessity, which has deprived the borrower of his free will, and placed him in the list of those deserving pity and compassion, will not equally excuse him from refunding the money, which his necessities may also have made impossible, as for having borrowed it in the first instance ? I wish it also to be considered, whether a court of equity will not, as much as a court of law, “ interfere to pro- « hibit the effect of contracts made in violation of laws “ enacted for the public good,” as was lately decided by this court in the case of McGuire vs. Ashby.(r) In addition to the possible effect resulting from the passing the act of 1784(s) on this subject of compensation, alluded to above, I wisli the effect of two other acts, in relation to it, to be also considered. By the aforesaid act of 1734, §2, all usurious contracts made prior to the commencement of the act of 1730, ch. 12,(t) are declared to be void as to all interest “ over and above the said =g 6 in the hundred per annumand a similar provision is made by the act of 1748, § 4,(u) as to all usurious contracts made prior to November 1734, the time of the commencement of the act of 1734 aforesaid. These old acts, therefore, in relation to the times prior to the 10th of November 1734, had in fact legalized usurious contracts up to the point of the principal and lawful interest. That,, therefore, which, in England, depended only upon the construction of a court of equity^ in relation to the measure of the relief, had received in this country the form and sanction of a legislative act.
*193 The legislature carried into that act, as being more solemn and binding, the principle existing in the courts of equity as aforesaid$ yet in legislating prospectively, from the 10th of November, 1734, that law was repealed, and with it most probably, the principle of which it was but a recognition and reiteration. I wish to know, whether there is any just principle, which, when an act is repealed, which only reiterates and legalizes a principle of construction, at the same time preserves that principle in existence l Do not the act and the principle declared by the act, fall together ? If an. old statute is exactly repeated in a new one, or in a revisal of the laws, and the new or the revising act is repealed, does the old law still remain in force ? And if this be not so, in general, as to an act or a principle, does not the construction equally hold, in a case in which the former legislative act is not entirely revoked, but is succeeded by another, which provides, at least in part, for the case embraced by the former ? Does not the old law or principle also stand changed with the new ? I wish it further to be considered, whether, under such a clear change of the legislative mind on this subject, as that I have just mentioned, and under an utter destitution of any statutory measure of compensation, e,xcept that which is embraced by the 3rd section of the act of usury, we can either say that there is any statute or any principle applying to the case of compensation, except that provided by that section ?
These are some of the considerations which have caused me to doubt on this subject j and I now merely throw them out, for the consideration of counsel, when the question shall again come before us. I repeat, however, that I have no conclusive opinion upon the subject, and that my mind is open to conviction on it. The subject is too important in Us effects and consequences, to be settled without the fullest consideration.
The following was entered as the decree of the court 5
” This day came the parties &c., and the court he. is of *194 (< opinion, that the chancellor erred in overruling the ex- “ ception to the answer of the appellee King, instead of « sustaining the same, and ordering him to put in a more “ sufficient answer. The court is further of opinion, that ((jjjere js no error ¡n 8^^ order of dissolution so far “ as it goes, but that the said court of chancery ought also “ to have dissolved the injunction as to the appellee King ; “ therefore it is decreed and ordered, that the said order, “ so far as the same is approved as aforesaid, be affirmed, <(. and that the appellants do pay unto the appellees their *( costs, &c. And it is ordered, that the cause be remanded “ to the said court of chancery to be further proceeded in, « pursuant to the principles of this decree.”

 Judge Cabell did not sit in this cause.
JVoie. After the injunction was dissolved by the court of chancery, the appellees took possession of the land under the judgment in the writ of forcible detainer ; and the counsel of the appellants moved the court of appeals, upon notice given to the opposite party, for a writ of restitution or other proper process, to restore the appellants to possession. But the court over-ruled the motion.

 2 Mun. 407,

 2 Mun. 407.

 4 Stat. at Large, p. 39.

 Mitf. 158, 161.

 Harr. eh. pr.

 5 Mun. 90.

 Muf. 159.

 Mitf. 1 9.

 6 Munf. 541.

 Ante p. 101.

 4 Stat. at Large, p. 396.

 Ib. p. 295.

 6 Stat. at Large, p. 103.