Staples, J.,
delivered the opinion of the court.
The original bill in this case was filed to enjoin the sale of real estate under a deed of trust executed by complainant, upon the ground that the’ debt is tainted with usury. The only defendants are the trustee and one Parker Campbell, who negotiated the sale of the note secured by the deed. The bill, after stating the circumstances attending the execution of the note and the deed of trust, calls upon the defendants to answer on oath, and to disclose on oath the name of the person or persons who are the true owners of the note if the defendant Campbell is not the true owner.
The trustee answered, stating his connection with the transaction, denying all knowledge of the dealings which resulted in the loan, and expressing his belief that the contract is not usurious. Campbell also answered, stating that he is a broker in the city of Richmond: that the note was brought to him to sell: that he accordingly put it upon the market, and sold the same to one Jacob S. Shriver, who is the owner: that he, Campbell, made no inquiries in regard to the note: that he gave no information concerning it: that he has no interest in it, and never had any, except as to his commission: and that he is adyised the transaction • is not usurious, but is a bona fide sale to an innocent purchaser for value, in the usual • and regular course of business.
These answers were filed at the June term 1869. No further steps seem to have been taken in the cause *until the December term 1871. At that term the complainant, in connection with other persons named as co-plaintiffs, tendered an amended and supplemental bill, making Jacob Shriver, the holder of the note, a party defendant, in addition to the other defendants; disclaiming any discovery from him, asking an issue to be tried by a jury, and a decree annulling the contract.
The chancellor refused to permit the amended bill to be filed, and rendered a decree dissolving the injunction and dismissing the original bill. The only question it concerns us now to consider, is whether this refusal was proper under the circumstances. The ground taken in support of it is, that the borrower cannot be permitted to file a bill of discovery and relief, and under it obtain the answer of the defendants, and then file an amended bill disclaiming a discovery, and insisting upon an entire annulment of the contract: that if he proceeds under the 7th section of chap. 141, Code of 1860, he must be content with the relief afforded by that section: that is simply an exoneration from the payment of all interest; and having made such election he cannot be allowed to change his ground, to proceed under the 10th section, and insist upon a forfeiture of the entire debt.
It would seem to be very clear, that if the lender is made a party to a bill under the 7th section and answers, he cannot be proceeded against thereafter under the 10th section of the statute; but here the original bill is not against the lender, or against any one claiming in privity with him, or under whom he claims. It is against the trustee, who is regarded as the agent of both parties, and the broker who effected a sale of the note, and who has no further connection with or interest in the transaction. When the original bill *was filed the complainant did not know who held the note in controversy: that fact was first disclosed in the answer of the defendant Campbell.
The question therefore before us, is not whether after a bill of discovery and an answer from the lender the borrower may proceed against him in an amended bill for an annulment of the contract; but whether having by mistake filed a bill against persons having no interest, and having obtained a discovery from them, the borrower is thereby precluded from a resort to the lender for an annulment of the contract upon the ground of usury.
There can be no question, I imagine, that upon the coming in of the answer to the original bill, the plaintiff might have dismissed his suit, and immediately thereupon brought a new bill, under the 10th section, against the lender. And he might equally submit to the dismissal of the chancellor, and at once file such bill against the lender. As to this there cannot be a doubt, I presume. The reason is apparent. The principle upon which equity courts have acted is, that no man shall be required to accuse himself, or to answer as to any matter which may subject him to a penalty or a forfeiture. When, therefore, the borrower called upon the lender to answer as to the usurious contract, the latter might demur to the bill, unless the plaintiff waived the penalty, and proffered to pay the principal and the legal interest. This was the practice of both English and American courts; and upon this practice the seventh section is based, modified, however, in requiring the debtor *81 to pay the principal due without any interest.
How it is very clear that these principles can apply only to a bill against the lender. The waiver of the forfeiture must be as to him, as he alone can make the '-’discovery; and the proffer to pay must be also to him, as he alone can receive it. It is true that both the waiver and the offer of payment are now dispensed with in practice. This, however, is only because the statute dispenses with both in a. bill by the borrower against the lender for discovery and relief. When the bill is not against the lender, but some other person having no interest in the loan, the borrower’s rights and remedies as against the former cannot be affected, whatever may be the result. As the lender cannot be prejudiced by any proceeding in a suit to which he is not a party, so he can derive no benefit therefrom. It is therefore very clear, that upon a dismissal of the original bill in this case, the complainant might at once lile a new bill ag-ainst the defendant, Shriver, disclaim a discovery, and ask for an issue under the 10th section of the statute.
The question is, may he not accomplish the same object by an amended bill. The rule in equity in regard to amendments is, that they may be made when the bill is defective in its prayer for relief, or in the omission or mistake of some circumstance connected with the substance of the case, but not forming the substance itself. The plaintiff will not be permitted to abandon the entire case made by his bill, and make a new and different case by way of amendment. Shields v. Barrow, 17 How U. S. R. 130, 144.
According to the KJnglish practice, where a party has mistaken his case, and brings the cause to a hearing under such mistake, the rule is, to dismiss the bill without prejudice to a new bill. But even there the rule is in many cases disregarded. Thus in Mayor v. Dry, 2 Sim. & Stu. R. 113, the •complainant by his bill sought to set aside a deed upon the ground of fraud. The defendant answered insisting upon the deed; the '“'complainant being satisfied the deed could not be successfully impeached, was permitted to file an amended bill relying upon it.
In Smith v. Smith, Cooper’s Ch. Cas. 141, a bill for an account against the defendant as bailiff was allowed to be changed into a bill for the foreclosure of a mortgage. See the cases cited in 1 Daniel’s Ch. Prac., page 408. It is said by the author just mentioned, that great latitude is allowed to the plaintiff in making amendments, and the court has gone to the extent of permitting a bill to be converted into an information. It has been held where a plaintiff filed a bill stating an agreement, and the defendant by his answer, admitted there was an agreement, but different from that stated by the plaintiff, that the plaintiff might amend his bill abandoning his first agreement and praying for a decree according to that admitted by the defendant.
In the different states it is well known, that the practice of courts of equity in allowing amendments is much more liberal than in Bngland. Those courts while professing to adhere to the rule, that the plaintiff shall not by his amended bill - make a new case, have allowed so many departures from it that it is now scarcely susceptible of any very accurate definition.
Por example: In Philhower v. Todd, 3 Stock. R. 54-312, it was held, even after a hearing upon a motion to dissolve an injunction and the delivery of the court’s opinion, that the injunction should be dissolved and the bill dismissed, the injunction might be retained, and the party permitted to amend by altering the frame and the averments of his bill.
In Buckley v. Corse, Saxton’s R. 504, the bill charged that the plaintiff had title to the premises older than the defendant’s mortgage, but that under the belief that the mortgage was prior to his estate, the plaintiff *had agreed to pay it, and had advanced large sums on that account. The bill prayed for an account of the moneys thus paid. Upon the coining in of the answer denying the allegations of the bill, the injunction was dissolved. Afterwards the complainant had leave to amend by making it a bill to redeem the defendant’s mortgage. See Henry v. Brown, 4 Halst. Ch. R. 245; Harris v. Knickerbacker, 5 Wend. R. 638; S. C., 1 Paige’s R. 209; Bellows v. Stone, 14 New Hamp. R. 175; McDougal’s adm’x v. Williford, 14 Geo. R. 668; Neale v. Neales, 9 Wall. U. S. R. 1.
It is, however, unnecessary to multiply these citations from foreign courts, when we have cases so much nearer home.
In Anthony v. Leftwich’s Rep., 3 Rand. 238, the bill was filed for specific execution of a contract relating to land. This court was of opinion upon the pleadings and evidence, it was not a case for specific performance. It, however, remanded the cause to the Circuit court, with leave to the complainant to make new parties, and claim compensation for the improvements he had made on the land.
In Parrill v. McKinley, 9 Gratt. 1, the bill was for specific performance, and the plaintiff was permitted to file an amended bill asking for a rescission of the contract, f these cases do not show that the plaintiff! Is permitted to make a new case, they at ileast show that he may by his amendmen so alter the frame and structure of his bill as to obtain an entirely different relief from that asked for originally. This is founded upon good reason. Why should the plaintiff be put to a new bill for different relief upon the same transaction when the object can be accomplished by an amendment. If there is danger that the defendant will be injuriously affected by the amendment it will be refused, *'and the suit will be considered as pending only from the time of the amendment.
In the case before us, the averments of fact are substantially the same in the amended *82 as in the original bill; the subject-matter of both is the same; and what is important to be considered, the relief asked for is the same in both cases. The only material difference between them is, that one asks for a discovery, and the other disclaims it. But this does not make a new case. It certainly has no such effect as to the lender who was not a party to the original bill. The complainant having obtained a discovery in regard to the ownership of the note, may well say he desires no discovery from the lender, as to whom he is full-handed with proof. Why should the latter complain. He is not prejudiced either by the original proceedings or by the amendment, to any greater extent than he would be by a new bill. So far as he is concerned, the amended bill is the commencement of the proceeding.
According to the rule laid down in Marks v. Morris, 2 Munf. 98, the aid of equity is granted to the borrower to enable him to try the question of usury before a jury, because by the form of the security he is deprived of his day in court. In such case the plaintiff may, therefore, if he pleases, waive the right to the defendant’s answer. This rule, by which a court of equity gave its assistance to the vacation of the contract and the forfeiture of the entire debt, was questioned by eminent judges, entirely repudiated by others, and was finally overruled after a judicial controversy of forty years. The doctrine of Marks v. Morris has, however, been adopted by statutory enactment, and is now the law of the state, not to be questioned by this or any other court. Brockenbrough’s ex’or v. Spindle’s adm’r, 17 Gratt. 21. The legislature *has in effect said, that a borrower who wants no discovery from the lender shall not be compelled, whether he will or no, to accept it; and further, that the operation of the statute ag-ainst usury shall not be defeated by the form of the contract. When, therefore, the borrower asks for an issue and disclaims a discovery, he presents himself in the assertion of a pure legal right. His application, however made, whether by original or amended bill, must be received with as much favor as the assertion of any other legal right. A party cannot be deprived of a plain statutory privilege because the court may think its exercise harsh and oppressive.
If, therefore, the bill in this case is to be regarded as filed under the seventh section of the statute, I can see no conclusive reason why it may not be so amended as to the lender (a new party) as to conform to the tenth section.
But is the original bill under the seventh section? The counsel on one side contend that it is; the counsel on the other as strenuously maintain that it is not; and the judges are not agreed on the question. The truth is, it has features that bring it under either section. It calls upon the defendants to answer under oath; but this does not necessarily convert it into a bill of discovery and relief. In Marks v. Morris the prayer of the bill was, that the defendants may, on their corporal oaths, true and perfect answer make to the premises, as fully as if they were particularly interrogated. The court say, that notwithstanding this prayer, it was not a bill of discovery and relief contemplated by the third (now the seventh) section of the statute. One of the reasons, and indeed the principal one, assigned for this conclusion was, that the appellant, so far from averring he stood in need of a discovery, averred, on *the contrary, that he could prove the same by a particular witness whom he named. That averment is wanting in the present bill. It, however, contains another equally suggestive. It asks that the note may be delivered up to be cancelled, and the property be reconveyed by the trustee to the proper parties. This form of prayer is entirely inconsistent with the extent and measure of relief prescribed by the seventh section. It is true the complainant does not ask an issue; but inasmuch as he requires- the securities to be cancelled, he is entitled to a trial before that tribunal which can alone declare the nullity of the contract on the ground of usury. This was the view taken in Marks v. Morris, and other cases. McPherrin v. King, 1 Rand. 172.
This original bill was manifestly px'epared in great haste, and without due considex'ation. It is very probable the attorney was looking more to prevention of the sale than to the measure of his relief. It is impossible to say with absolute certainty what was intended, unless we can affirm with confidence that the plaintiff meant one form of bill exclusively. We ought not to deprive him of the privilege of stating by proper averments, in an amended bill, precisely the object in view.
The rule laid down in Story E)q. PI., # 391, is, that “where a matter has not been put in issue with sufficient precision, the court, even upon the hearing, will give the plaintiff liberty to amend his bill for the pux'pose of making the necessax-y alteration.” Clearly, where so much uncertainty exists as to the objects of a bill, and there is an equity on the face of it, it is better to allow an amendment than to dismiss it. Such an indulgence better accords with the liberality of courts of equity in Virginia.
*The singular anomaly suggested by the leax-ned counsel *for the appellee, of the answers being evidence under the original bill and not evidence under the amended bill, does not exist in this case. The answers of the trustee and the defendant Campbell have accomplished their end. For all practical purposes they are out of the case. They cannot be read for or against the defendant Shriver, either under the original or amended bill. The matter of contx'ovex'sy is now between the borrower and the lender. The answer of the latter cannot be read of course, because the complainants have disclaimed any discovery from him.
The principal difficxtlty in this case grows out of the delay in tendering the amended bill. This difficulty might be insuperable *83 had the defendant Bhriver been a party to the original bill from the beginning. But he is now for the first time brought before the court. He did not choose to make himself a party to the original bill, or to move for a dissolution of the injunction. The cause seems, by common consent, to have remained upon the docket witout any action or motion by either party. However this may be, as the complainants may at once file a new bill against the defendant Shriver, the delay in tendering the amended bill cannot prejudice his interests.
The only remaining question is as to the new plaintiffs inserted in the original bill. They are the wife and infant children of the original plaintiff, and claim the lots in controversy, or an equity of redemption in them, under a deed executed for their benefit by the complainant subsequent to the deed of trust in controversy. These parties are, of course, directly interested in the subject-matter of this suit. The only question is, whether they may be united in the amended bill with the original plaintiff. It is the settled x>ractice of courts of equity to allow an amendment of the bill by *the introduction of new parties, plaintiffs or defendants, when necessary to the ends of justice, or to prevent further litigation. As a general rule this is not a matter of course, but discretionary with the court. 1 Dan. Ch. Pr., page 405.
In Mangkan v. Blake, 3 Chancery appeal cases 32, the sole jdairitiff in a creditor’s administration suit alleged that she was the personal representative of a creditor of the testator. At the hearing it appeared that the plaintiff was not his representative, and she then applied for leave to amend the bill by adding the true party as a coplaintiff with her, and by inserting other allegations to show that she had a beneficial interest in the debt which was the foundation of the suit. It was objected that the amendments amounted to a new bill, that the plaintiff’s case was wholly changed, and that it was contrary to the practice of the courts to allow amendments under such circumstances. The court, however, permitted the amendments, saying they were not unreasonable, and did not cause any prejudice to the defendants. In Sillings v. Bumgardner, 9 Graft. 273, it was held that when the plaintiff has an interest in the subject matter of the suit, the bill may be amended, and other persons having a like interest may be joined as coplaintiffs. Coffman v. Sangston, 21 Graft. 263, is to the same effect. These authorities fully maintain the amendment x:>roPosed by the introduction of the new plaintiffs.
Por these reasons we are of opinion that the Chancery court erred in refusing to permit the amended bill to be filed, as requested by the appellants; and for this error the decree must be reversed, and the cause remanded for further proceedings in conformity with the views herein expressed. The reasons for this conclusion have been given at greater length, because the '^question involved is one of first impression and not free from difficulty, and because the appellee is sustained by the decision of the learned judge of the Chancery court, always received by this court with the greatest respect and consideration.
The decree was as follows:
The court is of opinion, that the Chancery court erred in refusing the leave asked for by the appellant and his coplaintiffs to file the amended bill tendered by them and made a part of the record of this cause; and in dissolving the injunction and dismissing the original bill of the affpellant with costs, without allowing said amended bill to be filed. Therefore it is decreed and ordered, that the decree of the said Chancery court be reversed and annulled, and that the appellant recover against the appellee his costs by him expended in the prosecution of his appeal aforesaid here. And this court proceeding to render such decree as the said Chancery court ought to have rendered, it is further decreed and ordered, that the said amended bill tendered as aforesaid be allowed to be filed, and proper process issued to mature the cause thereon, without jyrejudice to the injunction heretofore awarded; and that the cause be remanded to the said Chancery court for further proceedings to^be had therein on the issues presented.
Decree reversed.