# Wheeling,

## DAVIS, COMMITTEE, *v.* DEMMING *et al.*

*(Absent, JOHNSON, JUDGE).

Decided December 12, 1877.

1877.
Special Term.

1. The 10th section of chapter 141 of the Code of Va. of 1860, is applicable only to bills to prevent the sale of property conveyed by a deed of trust to secure a usurious debt.

2. All other bills in equity for relief against a usurious debt unpaid, excepting those brought under said 10th section, must be regarded as brought under the 7th section of said act; and whether the usury be confessed in the answer or proved by evidence, the plaintiff is entitled to the relief provided for by the 7th section of said act, that is, to be relieved on the payment of the principal justly due, without any interest; and to entitle the plaintiff to this measure of relief, he need not specially pray therefor in his bill, nor need he offer to return the principal money borrowed.

3. A bill in equity for relief on account of money already paid on usurious contract, is not a bill under said 7th section, but such a bill as a party has a right to file, independent of the statute; and the relief therefor, to be afforded in such a case, is the relief which is afforded on the general principles of a court of equity; and the measure of this relief, in such case, is the excess paid above the principal and legal interest, with interest on such excess from the time of its payment.

4. A conveyance of land by a debtor to a creditor for the payment of a debt, with a proviso that such conveyance shall be void on the payment of the debt on a certain day, is a mortgage and not an absolute conveyance ; and a defeasance rendering it void, if the debt to be secured is paid on a day certain, is also a mortgage; and if instead of a provision or such defeasance, there be a covenant by the grantee to re-convey the land on a

certain day, if the debt is paid, such deed and covenant will equally constitute a mortgage.

5. Though the relation of creditor and debtor must always exist, yet there need not be any obligation to pay the debt expressed on the face of the deed, to constitute a mortgage. Such relation between the parties may always be proved by parol.

6. The distinction between a mortgage and a conditional sale is, that where money is not loaned, but is advanced with an agreement, that if it be repaid at a given time, the vendee will re-convey the land, and the whole transaction shows clearly, that no debt really remained after the execution of the deed, such transaction is a conditional sale; but if, no matter in what form the papers may be drawn, the whole transaction shows that after the execution of the deed a debt still remained, such transaction will be held to be a mortgage.

7. Though the deed be absolute on its face, or though it be drawn as an absolute deed, and an obligation to re-sell at a given future day for a certain price, the real nature of the transaction can be proven by parol testimony, or by surrounding circumstances.

8. The following circumstances have great weight in determining that an absolute deed, or a paper drawn up in the form of a conditional sale, is in reality a mortgage: First, if the alleged price given for the property is grossly inadequate. Secondly, if the vendor remains in the possession of the property. And lastly, the fact that there were or had been, when the deed was executed, negotiations pending for a loan.

9. After the close of the term of the court, at which a decree is rendered settling any of the principles of a cause, though such decree be interlocutory as a general rule, the court cannot set it aside or disregard it in any future decree, unless there be a petition for a rehearing.

Appeal from a decree of the circuit court of the county of Wood, rendered on the 10th day of July 1874, in a cause in chancery in said court then pending, wherein John W. Davis, committee of William H. Woodyard, was plaintiff, and Charles T. Demming, John S. Burdett and J. E. Sharp were defendants, allowed upon the petition of said plaintiff.

The Hon. C. S. Lewis, late judge of the second judicial circuit, pronounced the decree complained of.

1877.
Special Term.

Davis, Com-
mittee,

v.

Demming et al.

*John A. Hutchinson* and *James Hutchinson,* for appellant.

*J. H. Ferguson* and *Okey Johnson,* for appellees.

GREEN, PRESIDENT, who delivered the opinion of the Court, prepared the following statement of the case:

On the first Monday in June 1869 William H. Woodyard filed his bill in chancery against Charles T. Demming, John S. Burdett and J. E. Sharp in the circuit court of Wood county. He alleges therein, that he conveyed his farm in said county, consisting of four tracts of land, in 1863 by a deed of trust to secure a certain debt; and in 1864 he again conveyed his said farm by another deed of trust to secure another debt to same party. In May 1867 the creditor demanded payment of said debts; and they not being paid, his farm was advertised for sale; that being thus pressed he borrowed of Charles T. Demming $2,000.00 to pay those debts, and he and his wife executed to said Demming therefor, on June 10, 1868, a deed for his said farm, which was absolute on its face; and at the same time Demming executed to him a contract to re-sell and re-convey to him said farm, on condition that he would pay Demming therefor $2,500.00 on June 10, 1868; that this farm was worth three times the amount Demming loaned him; that at the end of the year for which this $2,000.00 was loaned, and for the use of which for one year he was to pay $500.00, Demming insisted on the payment of this money, or otherwise he would take steps to dispossess him of his farm, which by his agreement with Demming was to remain in his possession, till this $2,500.00 was due; being thus pressed he borrowed of Burdett and Sharp $2500.00 for three months, wherewith to pay Demming, agreeing to pay them $500.00 for the use of this $2,500.00 for three months; that thereupon Demming and his wife and Woodyard made an absolute deed for this farm to Burdett and Sharp, dated July 10, 1868, and at

same time Burdett and Sharp, signed a paper whereby they agreed to re-sell and convey this farm to him for $3,000.00, provided he paid the $3,000.00 on September 10, 1868. The bill charges that these transactions were really loans, and these deeds and conveyances were really but mortgages, that the loans were at usurious interest, and that his said deeds were therefore null and void. The prayer of the bill is as follows :

"In tender consideration and for as much, that your orator is *remediless* by the strict rules of the common law, and relievable only in a court of equity, where matters of the kind are properly cognizable under the statute, to the end therefore that the said Charles T. Demming, John S. Burdett and J. E. Sharp, and their confederates may be made parties to this suit and required to answer the charges herein set forth upon their corporal oath, your orator prays that an issue may be directed out of chancery in accordance with the provisions of section 10 of chapter 141 of Code of Virginia, second edition, and upon it being determined or found by a jury that the said deeds dated the 10th day of June 1867, executed by your orator and wife to Charles T. Demming, and the deed dated the 10th June 1868 executed by Demming and wife and your orator and wife to said Burdett and Sharp, were usurious, the same may be declared null and void and set aside, and that the contract made on the 10th of June 1868, between your orator and the said Demming, and the contract of the 10th of June 1868, between your orator and the said Burdett and Sharp, may be declare usurious and set aside, and held for naught; and the further prayer of your orator is, that the said Charles T. Demming, John S. Burdett and J. E. Sharp may be forever enjoined by this honorable court from instituting any suit at law or other proceedings, to evict or dispossess your orator of his property, and that your orator may be quieted and secured in the peaceable possession of his property aforesaid, and as in duty bound he will ever pray."

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

With the bill are filed, as exhibits, the deeds and defeasances or contracts to re-convey conditionally, referred to in the bill. The answer to this bill filed by Demming says, that Woodyard's farm being about to be sold to pay the debts secured by the deed of trust amounting to about $2,000.00, he applied to him to buy his farm at that price; that he did with great reluctance consent to do so, and did do so, paying him therefor $2,000.00 in cash. He says, "he admits he sold the said farm to the plaintiff for $2,500.00 afterwards, when he was not bound to do so, and gave him a year in which to pay the same; and that after the year had expired, the plaintiff sold the same to Burdett & Sharp, and at his request he united in the deed to them." He denies that he loaned any money to the plaintiff. He denies that the farm is worth what the plaintiff claims it is worth, and it would not, if sold at auction under favorable circumstances, bring more than from $2,000.00 to $2,500.00. He insists that if the transaction was usurious, the plaintiff could not claim relief under the 10th section of chapter 141 of the Code of 1860, but only under the 7th section of this chapter.

Though the answer of Demming states that he sold the farm to plaintiff when he was not bound to do so, and after he had purchased it, yet the exhibit filed with the bill shows that the deed and agreement for the re-sale were simultaneous acts, both being of the same date. The answer of Sharp states, that he never heard of any borrowing and lending between Woodyard and Demming till after the institution of this suit, but only of a sale of the land by Woodyard to Demming, as evidenced by the deed. He states, that Woodyard annoyed him for a period of two months to purchase his farm; that there never was a proposition made by either of them to borrow or lend money; that Woodyard offered to sell the farm at $2,500.00, and the agreement to re-sell was also suggested by him; that he and Burdett did all they could to get rid of Woodyard's importunities, but finally

they yielded to his wishes, and did purchase the land at $2,500.00, which was paid to Demming.

He denies that he ever made any threat to dispossess Woodyard, that all he wanted was his $2,500.00 and interest, and did not want the farm, nor did Burdett; and that neither one asked any more of Woodyard, and they had so told him, and it was all they now asked. Burdett in his answer repeats these allegations and says, that the land is not worth more than $2,000.00 in cash. These answers were replied to generally; John W. Davis was appointed by the court a committee of Woodyard, who was stated to be then *non compos mentis*; and the defendant gave notice to disolve the injunction, which had been awarded to prevent the defendants from instituting suits at law to dispossess the plaintiff. John W. Davis, committee of Woodyard, filed an amended and supplemental bill stating his appointment as committee, and repeating the statements of the bill, and concluding with this prayer:

"To the end therefore that the said Demming, Sharp and Burdett may severally answer all and any the matters and things charged by way of supplement and amendment, and that your orator, as committee of the estate of said Woodyard, may have full and general relief in the premises, such as the nature of the case requires, your orator prays that the said suit may proceed in the name of your orator and said Woodyard, that said deed made by Woodyard and wife to Charles T. Demming on the 10th of June 1867, and the deed made by Demming and wife, and Woodyard and wife, made June 10, 1868, may be declared null and void, and cancelled, and surrendered up to your orator, as the committee of said Woodyard; and the said defendants, Demming, Sharp and Burdett, be forever enjoined and restrained from proceeding in the courts of this State, from enforcing the said contracts of sale made on the 10th of June 1867, and the 10th of June 1868, respectively, exhibits C and E, (herein before copied,) and in duty bound he will ever pray, &c."

Charles T. Demming likewise demurred to the bill. The depositions prove that the land, at the time of these transactions, was worth at least $4,000.00, that Woodyard was a man of very weak judgment, if not a positive fool; that Demming and Sharp both, before these transactions were completed, spoke of lending money to Woodyard, and afterwards spoke of having lent this money to him. The details of this evidence are stated more particularly in my opinion hereafter; this will suffice to an understanding of this opinion. On the 17th day of May 1871 the court made this decree:

"This cause came on this day to be heard on the bill and exhibits filed therewith on the demurrer of the defendant, Charles T. Demming, as to the want of tender of the money actually received by said Woodyard; on the orders formerly made in the cause, on the petition, amended bill, and supplemental bill of said John W. Davis, committee appointed to protect the interest of said Woodyard in the same; on the answers of said defendants, severally made with general replication to the same; on the depositions and the proofs taken and filed in the cause; and was argued by counsel; on consideration whereof the court doth suspend its opinion on the said demurrer of said defendant, Charles T. Demming, as to the want of the tender of the money actually received by said Woodyard; and the said committee of 'said Woodyard by reason of said Woodyard being *non compos mentis* and unable to manage his estate, hath leave to amend his said bill as to that particular, and hath leave until the tenth day of the next term of this court to tender the money actually received by said Woodyard, as hereinafter set forth. And the court doth further adjudge, order and decree that the deed executed by said Woodyard and wife to said defendant, Demming, bearing date the 10th day of June 1867, for the conveyance of the tract of land in the bill mentioned, and the contract permitting said Woodyard to re-purchase said land at a future date, at the increased price of $500.00, which

1877.
Special Term.

Davis, committee,
v.
Demming *et al.*

contract was executed on the same day of the date of said deed, and it is construed with said deed, and that the said deed executed by said Woodyard and wife, and Demming and wife to said defendants, Sharp and Burdett, for the conveyance of the same land, bearing date the 10th day June 1868, in the bill mentioned, together with the contract under seal bearing the same date as said last mentioned deed, permitting said Woodyard to re-purchase said land within ninety days, at the increased price of $500.00, constitute two several conditional sales with the privilege to redeem in said Woodyard, or two several mortgages of the said two several dates, and that they were executed to secure the payment of money lent by the said defendants to the said Woodyard, at the dates of said deeds, at a greater rate of interest than that allowed by law, to-wit: at a greater rate than six per centum per annum, and that the said two several deeds were made for the purpose of evading the law respecting usury, and that the transactions, which they relate to, are tainted with usury; and the Court doth adjudge, order and decree, that the said Woodyard or his committee aforesaid, hath the right to redeem the said land, so conveyed by said several deeds, on the re-payment of the sum of money actually received by said Woodyard from the said defendant, Charles T. Demming, in consideration of said deed of the 10th of June 1867, but without interest. And it appearing to the court that the said Woodyard, by his committee, has not tendered here in court with his bill the said sum of money actually received by said Woodyard as aforesaid, to-wit: the sum of $1,920.00, it is further adjudged, ordered and decreed, that the said committee of said Woodyard hath leave until the 10th day of the next term of this court, to pay the receiver of this court the said sum of money so actually received by Woodyard; and this cause is continued until the next term of this court.

And on the 3d day of February 1871, the court entered this decree: "This cause came on this day to be

1877.
Special Term.

Davis, committee,
v.
Demming, et al.

further heard upon the bill and exhibits, the separate answers of the defendants filed in this cause, and the replication thereto, and the depositions of witnesses filed in the cause, and the former orders heretofore made in this cause, and the demurrer of Charles T. Demming to the plaintiff's bill and joinder therein, and was argued by counsel, and the court being of opinion that there was error in the order made in this cause at the former term of this court, and entered on the —— day of —— 1871, so far as said order sustained said demurrer as regards said plaintiff to make a tender of the sum of $1,920.00, mentioned in said order, to Burdett and Sharp, by the 10th day of this term; and it is therefore adjudged, ordered and decreed, that said order in this particular be set aside as unnecessary and improperly entered, and the court being of opinion that the plaintiff's bill is a proper one, under the 10th section of chapter 141 of the Code of Virginia, edition 1860, and that said bill is sufficient, and that said demurrer is not well taken, doth therefore adjudge, order and decree, that said demurrer be overruled. And the court being of opinion that the plaintiff is entitled to relief prayed for in his bill, to have the question of facts of the usury therein, charged and alleged, tried by a jury in accordance to the 10th section of chapter 141 of Code of Va., 1860, doth therefore accordingly adjudge, order and decree, that the question whether the transaction between the said Charles T. Demming and W. H. Woodyard, on the 10th of June, 1867, wherein said Demming secured a deed of conveyance of the farm of said Woodyard, containing three hundred and five acres of land, mentioned in said bill, upon the payment of debts, held by one T. J. Cook, amounting to $1,920.00, and at the same time entered into a certain agreement in writing, to re-sell said farm to said Woodyard for the sum of $2,500.00, payable in twelve months with interest, was a transaction to secure the repayment of a sum of money or other thing loaned at usurious interest, or not, be tried at the bar of this

court in accordance to the provision of said 10th section of chapter 141 Code of Va.; and it also adjudged, ordered and decreed, that said jury enquire whether the transaction on the 10th day of June 1868 between said Wm. Woodyard and Burdett and Sharp, whereby they received from said Woodyard and wife and Demming and wife a deed for the same farm aforesaid, upon the payment of the said demand of Demming for $2,500.00 aforesaid, and at the same time entered into an agreement or contract, for the re-sale and conveyance of the same land to said Woodyard for the sum of $3,000.00, payable in three months with interest, was a transaction intended to secure the repayment of a sum of money or other thing borrowed at a usurious interest, and was a usurious transaction or not; and it is further adjudged, ordered and decreed, that the injunction heretofore granted in this cause, restraining and inhibiting the defendants and each of them, their agents and assignees, from interfering with the possession or the rights, title or interest of said plaintiff in the said land be continued until the further order of this court; and this cause is continued until the next term of this court. It is further ordered that all orders heretofore made in this cause in conflict with this decree, are hereby modified accordingly," &c.

On January 22, 1875, this issue was tried by a jury, who not being able to agree upon a verdict were, on the 24th day of January 1875, discharged. On July 10, 1874, Hon. Charles S. Lewis, presiding, the court rendered this decree.

"This cause came on this day to be further heard upon the papers read at a former hearing, the orders and decrees made herein, and was argued by counsel. On consideration whereof the court is of opinion, that the deed executed by said Woodyard and wife and Demming and wife to the said Sharp and Burdett, bearing date the 10th day of June 1868, also the agreement in writing between the said Sharp and Burdett and the said Woodyard, bearing date on the same day, constitute a conditional sale of the

1877.
Special Term.
Davis, commit-
tee,
v.
Demming et al.
land, in the bill and proceedings mentioned, between the said Burdett and Sharp and the said Woodyard, and not a constructive mortgage to secure the payment of money, and that such being the case the issues heretofore directed to be tried at the bar of this court were immaterial. It is therefore adjudged, ordered and decreed, that the former orders made herein, directing said issues, be and the same are hereby set aside ; and it is further adjudged, ordered and decreed, that the injunction heretofore awarded in this cause be and the same is hereby dissolved ; and that the defendants recover of the complainant their costs by them about their defense in this behalf expended, and the said defendants have leave to sue out execution therefor."

And these memorandums were at the same time entered.

" *Memorandum*—After the court had rendered its opinion in this cause, and before the decree was entered, the plaintiffs asked leave to file the affidavits of James H. Hutchinson and John A. Hutchinson, which was permitted to be done as of the time indicated, and asked the court to continue the cause for reasons stated in said affidavits, which motion for reasons appearing to the court is overruled. At the time the motion was made to continue the issue heretofore made in this cause, the counsel for the defendants, immediately upon the court granting said motion, placed the papers of the said cause in the hands of the court, and moved the court to set aside said issue, and finally hear the cause, as the court understood it and still believes. The submission at the time was resisted on the ground, that James Hutchinson of the counsel for the plaintiff was sick and absent, but John A. Hutchinson, also of counsel for the plaintiff, being present, opposed the court taking the papers. The court took the papers upon the motion aforesaid. The said James Hutchinson learning of the fact, that the said cause had been submitted to the court as aforesaid, communicated with the court upon the subject, and he

was informed that any brief, he might file in this case by evening of Monday the 6th, would be considered, and accordingly the said Hutchinson filed his said brief."

"*Memorandum*—The effect of this decree is suspended until the period of sixty days, the defendants giving bond with approved security in the penalty of $300.00."

It is unnecessary to set forth these affidavits. From this decree of the court the plaintiffs have appealed.

GREEN, PRESIDENT, delivered the opinion of the Court :

This case requires us to construe the 7th and 10th sections of chapter 141 of the Code of Virginia of 1860. The 7th section: is: "Any borrower of money or other thing may exhibit a bill in equity against the lender, and compel him to discover, upon oath, the money or thing really lent, and all bargains, contracts or shifts relative to such loan, and the interest or consideration of the same; and if it appear that more than lawful interest was reserved, the lender shall recover only his principal money or other thing without interest, and pay the costs of suit." This section may be found in the acts of 1796, chapter 16, section 2, and has remained the law in Virginia and in this State, till the passage of the Code of West Va. of 1868. The 10th section is: "Upon a bill requiring no discovery of the defendant, but praying an injunction to prevent the sale of property conveyed to secure the repayment of a sum of money, or other thing borrowed at usurious interest, the court shall cause an issue to be made and tried at its bar by a jury, whether or no the transaction be usurious; on the trial of such issue neither the bill, nor the answer shall be given in evidence. If the jury find the transaction usurious, then the same relief shall be given, as if the party claiming under the conveyance had resorted to the court to make his claim available. But the court may grant new trials as in other cases." This section was enacted for the first time

33

in the session of 1849, and was adopted to settle a con-
troversy which had lasted 40 years: a controversy which
is perhaps the most remarkable to be found in the re-
ports for the diversity of the opinions of the judges, and
the pertinacity, I might say obstinacy, with which some
of the judges adhered to their opinions.   See *Brocken-
brough's ex'ors* v. *Spindle's adm'r*, 17 Gratt. 22.

In 1809 Hon. Creed Taylor, the chancellor for the super-
ior court of chancery for the Richmond district, decided
the case of *Marks* v. *Morris*, see 4 H. & M. 463.   Marks
filed his bill against Morris and Copeland, to be relieved
against a usurious contract, secured by two deeds of trust
executed by Marks.   Copeland, the trustee, was about to
sell the property conveyed by the deed of trust, and the suit
brought to enjoin the trustee from selling the property, was
for rescission of the contract, and for general relief.   The
bill stated that Hyman Marks, a witness, was privy to
the whole transaction, and by his testimony the usury
could be established.   The defendants were called upon
in the usual form, " to make true and perfect answer to
the premises, as full as if the same were again particu-
larly set forth and expressed."   Morris in his answer
neither admitted nor positively denied the usury, which
however was clearly proved by the testimony in the
cause (see 2 Munf. 207).   The chancellor's decree gave
the plaintiff relief against all but so much of the prin-
cipal money as appeared to be due and allowed him costs,
and directed if the principal due was not paid in a cer-
tain time, that the property conveyed by the deeds of
trust should be sold by a commissioner to pay the same.

In that case it was contended before the chancellor, that
the English authorities fully established, that relief in
equity could only be obtained upon the plaintiff's doing
complete justice, by paying the principal money and
legal interest; and that this should be the measure of re-
lief, unless the cases came expressly within the 7th sec-
tion above quoted, and the answer admitted the usury.
But the chancellor held that whether the answer admit-

ted the usury, or it was proven, the answer denying it,

the measure of relief under this 7th section was the same, that is, the complainant in either case would be relieved from the payment of all interest, but would be required to pay the principal, that to construe this 7th section otherwise would be hold out to every lender an inducement to withhold a fair disclosure of the facts upon this calculation : "If they are disclosed, I loose *all* my interest, but if they are not *disclosed*, though they be *proved*, I shall get *lawful interest;* and if they are not proved, I get my lawful and unlawful gain."

The chancellor, though urged, refused to modify this decree, so as to relieve the plaintiff, Marks, of all the interest, and have the defendant to sue him at law for the principal, and not order the sale of Marks's property, conveyed by the deed of trust, to pay the principal. The chancellor says in reference to this : "Shall Marks have the aid of the court, and not Morris? Shall the court not aid Morris, in getting from Marks, what he may withhold? or shall the court suffer Marks to go out protected against the *usury*, and put Morris to this action at law for his principal? Would this be right when they both are here, and according to Fonblanque entitled to equal justice? I think not. Must Morris sue at law? If he does, Marks pleads usury, and proves it by my decree. The court must provide for him, as well as Marks." See 4 H & M 468. This decision of the chancellor was appealed from by Marks, the plaintiff, and was decided in 1812 by the court of appeals then sitting in the case ; but three judges, Roane, Brooke and Coalter, see 2 Munf. 407. They unanimously reversed the decree of the chancellor, and remanded the cause. They held, "that the case made by the bill, was not embraced by the 7th section of the usury act above quoted, as the appellant wanted no discovery from the appellee ; but only found it necessary to apply to the court, to stay the trustee from selling, until the question of usury could be enquired into before some competent tribunal; and that the chan-

cellor ought not to have imposed on him the loss of the principal sum; but should have enjoined the trustee from selling, until by some proper proceeding to be instituted by the appellee, he should establish the validity of his contract; in which case the injunction should be dissolved; and in the contrary event perpetuated.

In the case of *Stone* v. *Ware* and *Smith*, decided in 1820, Stone executed for forbearance by Ware a bond including usurious interest, which bond was made payable to Smith, who was a creditor of Ware, and who had no knowledge of the usury, and Ware signed this bond as surety, Smith obtained a judgment upon it, and Stone obtained an injunction, which was dissolved by the chancellor, on the ground that the remedy was at law, and not in equity, since no discovery was sought by the bill; an appeal was taken, and the court, composed of the same judges that decided *Marks* v. *Morris*, decided, that as Smith had accepted the bond in good faith, and with no knowledge that Ware had practiced usury against Stone, he could have made no defense at law, and was entitled to no relief against him in equity; but the usury having been proved on Ware, Stone was entitled to relief against him, upon the terms of paying the principal due him, and legal interest. It will be observed, that though the court held in *Marks* v. *Morris*, that the chancellor erred in granting relief in that case, on the condition that even the principal should be paid, because the complainant had been deprived by the defendant of a day in court, yet in this case the same judges held, that though the complainant had had no day in court, yet he could only be relieved in equity, on paying the principal and legal interest.

In the case of *McPherrin et al.* v. *King, &c.* 1 Rand. 189, a deed of trust had been given to secure a usurious debt and other valid debts. The land had been sold by the trustee; it had been purchased by a third person for the creditors, and conveyed by the trustee; a writ of unlawful entry and detainer had been instituted and decided

in favor of the purchaser, but the writ of *habere facias possessionem* had not been issued,· when a suit was brought enjoining the dispossessing of complainant, and asking that the usurious debt might be decreed to be void; and that he might, on paying the other debts, be permitted to hold the land, or another sale be made of it. The bill did not call for a confession or denial of the usury, but said that the plaintiff was fully prepared to prove the usury by disinterested testimony.   The answer said nothing about the usury, and was excepted to on that account.   Judge Coulter was of opinion, "that a party cannot come into a court of equity for final relief as to the debt itself, on the ground of usury, and claim a forfeiture of the money borrowed; that the plaintiff could not waive an answer and that every case asking relief, must be brought under the 7th section of the usury act above quoted; and that whether the defendant admits the usury in his answer or denies it, and it is proven, the measure of relief is the forfeiture of all the interest, as provided by that section. He thought *Marks* v. *Morris* could be sustained, if confined to cases of deeds of trust, or new fangled judgment bonds, as he called them, otherwise not.· He was of opinion that the exception to the answer ought to be sustained, as the bill called for an answer in general terms.

Judge Brooke thought the case might be distinguished from *Marks* v. *Morris,* and that the plaintiff had assigned a different construction to it, by his exceptions to the answer, and his exception ought to have been sustained.

Judge Roane expressed the opinion, that the plaintiff had a right to dispense with the defendant's answer, and was bound to do so, if he did not bring his bill under the 7th section of the usury act above quoted; and if he brought it under this section, he was bound to allege that he had no other proof.   This section had then appended to it an addition not now in it, relieving the defendant from all other penalties, except the forfeiture of all interest.   He expresses no opinion as to the

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

measure of relief, where the suit is not brought un-
der the 7th section, but the usury is proven, and ex-
pressed his dissatisfaction with the decision in *Stone* v.
*Ware;* and he withdrew his approval of it, leaving but
two judges concurring in that decision.

In the case of *Young* v. *Scott,* 4 Rand. 415, Judges
Carr and Green held, that " in *all* cases, where a party ap-
plies to a court of equity for relief against a usurious
contract, unpaid, whether he alleges in his bill that he
is able to prove the usury without the defendant's con-
fession or not, he can only be relieved upon payment of
the principal, *without interest,* under the 7th section, above
quoted." The facts of the case were, that Scott had ob-
tained a judgment at law against Young as endorser of
a negotiable note, drawn by Dabney, and Young filed
his bill in chancery to enjoin the judgment on the ground
of usury. The bill called upon the defendants, Scott
and Dabney, to answer ; and it did not allege that the
plaintiff could prove the usury independent of the ans-
wer. The answer admitted the usury. Judge Carr in
his opinion says : " It is a fundamental principle of a
court of equity that no man shall be forced to accuse
himself. In conformity with this maxim those courts
have constantly held, that a defendant may demur to a
bill, calling on him to answer any matter which may sub-
ject him to fine, forfeiture, imprisonment or penalties.
When the forfeiture or penalty is entirely in the power of
the plaintiff, if in his bill he waives it, the defendant can-
not demur, but must answer. The English statute of
usury subjected the usurious lender of money, &c. to the
loss of the sum lent. This, so far as it relates to the
principal and legal interest, the chancellors have consid-
ered a penalty. When therefore a bill in equity called
on the defendant to answer as to a usurious transaction,
unless it waived the penalties of the act, and offered
to pay the principal with legal interest, the defendant
might demurr. This practice of the English courts our
legislature has taken as the basis of the 3d section of our

act against usury." (the 7th section above quoted);
" changing it only so far as to subject the lender to the loss of all interest and the payment of the costs of the chancery suit. This statute I have always considered as made merely to place that on the ground of *law* which was before *practice*; not to narrow or widen that practice, nor to make any change, except that the lender shall lose all interest and pay costs. I consider every bill in equity, for relief against usury, a bill under this section; that no man can come into that *forum* for relief from the principal sum borrowed, as that would be calling on equity to enforce a penalty; nor is he obliged to state in his bill, that he has no evidence at all, and depends wholly on the answer; and if the answer deny the usury he may prove it *aliunde,* if in his power. But however he may succeed, whether by the confession of the answer or proof, I think, that in the language of the law, ' the lender shall be obliged to accept his principal money without any interest, and pay costs, but shall be discharged from all other penalties of the act.' The decree must therefore be reversed."

Judge Green in his opinion states, that the chancellor had required the payment of principal and legal interest, as the plaintiff had not stated in his bill, that he could not prove the usury, but by the oath of the defendant; and that he had probably been led to this conclusion, by the dicussion in *Marks* v. *Morris, Stone* v. *Smith* and *Ware* and *McPherin* v. *King.* He then reviews *Marks* v. *Morris,* so far as that case asserted, "that upon a bill to be relieved against a usurious contract, the court must apply the rule existing in courts of equity before, and independent of the statute, unless the plaintiff prays relief upon the distinct ground, that he had no proof of the usury, independent of the defendant's oath, and shows otherwise, that he claimed relief under the statute exclusively." He then goes into a lengthy investigation of the law, as it existed prior to the preparation of this 7th section as before quoted, and con-

1877.
Special Term.

Davis, commit-
tee,
v.
Demming *et al.*

cludes, "that the relief is to be given, if it shall appear that the contract was usurious, no matter how the fact may be made to appear. The sole object of the statute seems to be, to remove the difficulties before existing to proceedings in chancery, by abrogating by force of the statute, in case of the application to equity for relief, the penalty of total forfeiture, whether the plaintiff, in express terms waive the penalty or not, * * * so that in all cases the defendant might justly be compelled to answer, and the cause might come to hearing in chancery upon the bill, answers and proof." * * * One other object of the act was to prescribe as the measure of relief the payment of the principal only, instead of the principal and interest, as was before practiced. * * * The consequence of the construction of the statute in *Marks* v. *Morris*, would be, that if the defendant admitted the usury, he would get back his principal without interest; but if he denied it, and it was proved, one of these consequences would result: either the defendant would be entitled to his principal and legal interest, according to the principles of a court of equity, existing before the statute (in which case he would receive a premium for falshood and perjury,) or the plaintiff would be relieved by the courts declaring, that the whole debt, principal and interest, was forfeited, in which case the court would act directly against its most ancient and best settled principles, applicable to all other analogous cases; or the plaintiff would be entitled to no relief whatever, in which case the primary object of the legislature, to benefit the borrower by facilitating his remedy in chancery, and relieving him to a greater extent than he could have been relieved before, would be utterly frustrated in very many instances. I cannot believe that the legislature intended to produce by the act in question any of these consequences; or if they did, that they would leave that object to be obtained by doubtful constructions of the terms of the statute. If they had intended either of these consequences, they would have expressed that intent in unequivocal terms."

Judge Cabell was of opinion, that the case came within the 3d (now 7th), section of the usury act, and that it was not necessary for the decision of the case, that any of the principles in the case of *Marks* v. *Morris* should be discussed; and he entirely refrains from so doing. In the case of *Martin* v. *Lindsay's adm'r et al.*, decided in 1829, 1 Leigh 448, the facts and pleadings were almost exactly like those of the case of *Marks* v. *Morris.* Judge Carr, remarking that in that case it was decided " that the 3d (now 7th) section of our statute against usury is limited to cases of bills of *discovery*, when from defects of evidence the plaintiff is compelled to resort to the conscience of the defendant; that the bill there was not of that class, because it did not offer to return the principal nor pray that the usurious notes might be given up ; and so far from a defect of evidence, averred that the plaintiff could prove the usury by a witness whom he names; and the court decided that as the case was not within the statute, as the plaintiff wanted no discovery, but only that the trustee should be stayed from selling till the usury could be enquired into at law, the chancellor ought not to have imposed on the plaintiff the loss of the principal sum, but should have enjoined the sale until the defendant, before some competent tribunal, established the validity of his contract; in which case the injunction should be dissolved; and in the contrary event perpetuated," proceeds at great length to review this case, and all the subsequent cases above cited, as well as the English cases relied on in *Marks* v. *Morris,* and concludes thus: " upon the whole I am firmly convinced, that *Marks* v. *Morris* is not law, either taken generally, or restricted in its application to deeds of trust."

Judge Brooke reviews briefly the case of *Marks* v. *Morris,* and adheres to it; he thus speaks of its scope, and purpose as understood by him : " The court would not subject the plaintiff, complaining of usury, to the alternative of submitting in silence to the sale of his

34

property under an alleged contract, before he had an opportunity of controverting it, or of contributing to the sacrifice of his property, which would result from giving notice of the usury, in case he should not be able, after the sale, to prove the usury in a court of law. To impose the first alternative on the plaintiff, would have been to subject *him* to a penalty for not paying the money secured by the deed of trust, that is : to the sale of the trust subject, before the validity of the contract was tried in some competent court, as in the case of a mortgage ; and the latter alternative would have exposed *him* to a controversy with the purchaser under the deed of trust, which ought not to have preceded the controversy concerning the validity of the contract ; and would have exposed the *purchaser* to danger, in the event the usury charged should have been afterwards proved. The deed of trust, in short, presented a new case that was to be met by a principle, which, violating none of the established rules of a court of equity, was essential, as well to the policy of the law, as to the justice of the particular case, the principle, namely : that a party shall not, by the form of his contract, evade a controversy concerning its legal validity, and thereby subject his adversary to consequences, from which the law intended to protect him." Judges Cabell and Coulter concurred in the opinion of Judge Brooke.

In the case of *Fitzhugh* v. *Gordon*, 2 Leigh 620, the principles involved in the case of *Marks* v. *Morris*, and *Martin* v. *Lindsay's adm'r*, were again brought under review; and the court, four judges sitting, were equally divided. The cause was in fact, and in the character of the bill, similar to that of *Marks* v. *Morris*. Judges Cabell and Brooke adhered to the decision in that case, and Judges Carr and Green dissented therefrom. Judge Brooke again explained that case, that the decree of the court enjoining the sale because of the usury, until the defendant brought a suit to enforce the contract at law, did not conclusively decide the question, that there was

usury in the contract; but that such decree ought not to be used, or have any effect on the trial of the case at law.

In the case of *Turpin* v. *Povall*, 8 Leigh 93, decided in 1837, the facts were similar to those in the case of *Marks* v. *Morris;* but the bill prayed that the defendants may be compelled to answer all the allegations of the bill, that the sale by the trustee might be enjoined, the trust property be reconveyed to the plaintiff, the bond be delivered upon such terms and conditions as might be deemed equitable, and such other and general relief granted to the plaintiff as is agreeable to equity and the nature of his case; the lender by his answer denied the usury, but it was proved. It was decided, that though the borrower might have elected to ask merely the opportunity of trying the question at law, yet, as by the terms of his bill he has sought full relief in equity, he should only be relieved upon the terms of paying the principal money due. It was also decided in this case, that on a bill in equity for relief against a usurious debt unpaid, whether the usury be confessed in the answer, or proved by evidence, the plaintiff shall be relieved on the payment of the principal justly due without interest: Judge Brooke dissenting from this position.

Judge Brockenbrough in delivering his opinion expresses no opinion on the merits of *Marks* v. *Morris* as an original proposition, but simply remarks: "I will in the first place remark, that the decision in that case, however much it may have been objected to, is now too firmly established to be shaken. It has received the sanction of this court in *Martin* v. *Lindsay's adm'r*, 1 Leigh, 499, *Fitzhugh* v. *Gordon*, 2 Leigh, 626. " He is, as we have seen, mistaken in saying, that *Marks* v. *Morris* received the approbation of the court in the last of these cases, the court on this question being equally divided. He gives his view of what was decided in *Marks* v. *Morris*, saying: "The effect of this decision I understand to be, that as by the operations of deeds of trust the creditor had it in his power, by directing the trustee to sell the

land, to coerce the payment of his debt without the intervention of a court of justice, and as the debtor had no day in court, the court should give him an opportunity before a judicial tribunal of invalidating the corrupt agreement and the assurance founded on it. By this course the debtor by deed of trust is placed nearly on an equal footing with a mortgagor or obligor in a bond. In these last cases, if the mortgagor bring ejectment to recover possession of the land, or the obligor bring debt to recover the amount of the bond, the defendant has a day in court, and may defend himself on the ground of usury, and prove the mortgage or bond is utterly void; or if the mortgagee file his bill in equity to foreclose, the mortgagor may defend himself on the same ground, and even in a court of equity may invalidate the instrument. But the trustee may by the very terms of the trust deed sell the land and convey to the vendee. Unless equity interpose, the only remedy that the debtor has when the trustee is about to sell, is to hold on, and forbid the sale. But immediately he proclaims that the deed is infected with usury, he proclaims his own ruin. The cloud raised by a sale under such a proclamation would burst on his devoted head. His land would be sacrificed for a trifle, and he would be left with only the poor privilege of defending himself against the ejectment of the vendee, in which, if he happened to fail, the law would be to him more cruel than the most griping usurer. To avoid this, the court made the decision in *Marks* v. *Morris.*"

. He then proceeds to show, that the plaintiff in this suit did not ask, that the trustee be enjoined, till he has an opportunity, by the defendant's suing him at law, to make his defense before that tribunal, but asks a court of equity to relieve him; and that the measure of his relief, whether he depends on the admission of the answer, or proves the usury by evidence independent of the answer, is always the same, that is: he must in either case be relieved from all the interest, and recover his costs, as provided by said 3d (now 7th) section of the

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

usury statute, establishing this position by the same arguments, used by judges Carr and Green, in *Young* v. *Scott*, 4 Rand. 415. Judges Tucker and Cabell approved the decision in *Marks* v. *Morris*, and concurred in the views expressed by Judge Brockenbrough. Judge Brooke was of the opinion, that when the answer did not admit the usury, but it was proved by evidence independent of the statute, that the 3d (now 7th) section of the usury statute, did not apply; and all the relief, which the plaintiff could have, was to be released from so much of the interest as exceeded the legal interest, unless he brought himself within the principles of *Marks* v. *Morris*, as explained by Judge Brockenbrough. In *Campbell* v. *Patterson*, 11 Leigh 113, the court unanimously decided, that when the prayer of the bill was, that all compound, illegal and usurious interest may be expunged, and that the plaintiff may have such further relief as his case may require and justice dictate, that the measure of relief is the expunging of so much of the interest as exceeds the legal interest, the plaintiffs by this prayer in their bill, having waived the right to have all the interest expunged. In *Thornton* v. *Gordon*, 2 Rob. R. 719, the court unanimously decided, that upon a state of facts similar to those in *Marks* v. *Morris*, and on a bill framed in like manner, though plaintiff alleges that he expects to make full proof of his allegations of usury and expressly disclaims a discovery from the defendant, the defendant has nevertheless a right to file an answer denying the allegation of usury; and if he files such answer, it is entitled to the full weight of an answer in any other case; and if the usury is proved by one witness only, the injunction awarded must be dissolved and the bill dismissed. It was urged that the principles, on which *Marks* v. *Morris* was based, allowed the plaintiff in such a suit to disclaim a discovery of the defendant; and that such disclaimer deprived the answer of any weight as evidence; as otherwise the form, in which the usurer had put his contract, would put the borrower to a

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.
disadvantage, and under certain circumstances prevent him from having a day in court. And it is obvious, that if Judge Brooke's understanding of the principles, on which *Marks* v. *Morris* was based, be correct, there was much force in this argument. But all of the Court, consisting of Cabell, Stanard and Baldwin, concurred that the usual weight must be given to the answer in such a cause. In the *Bank of Washington* v. *Arthur, et al.,* 3 Gratt. 173, a very vigorous assault was made by the counsel for the defendants below on the case of *Marks* v. *Morris*; and all the authorities were cited to show, that it never had been acquiesced in by the bench or bar; and they insisted, that it was inconsistent with the well established principles of equity. The Court without overruling *Marks* v. *Morris* undertook to draw a distinction between the case before the Court and that case. The distinction however was very refined; and Judge Brooke in his dissenting opinion shows, that if *Marks* v. *Morris* was to be regarded as law, it ought to govern and control the case. The Court in a subsequent case, 17 Gratt. p. 26, speaks of this case as overruling, *Marks* v. *Morris ;* and it must be so regarded.

This decision was concurred in by judges Cabell and Baldwin, judge Brooke dissenting; and finally in the case of *Bell et al.* v. *Calhoun,* 8 Gratt. 22, the facts were entirely similar to those in *Marks* v. *Morris,* on a bill brought to enjoin the sale by the trustee. The plaintiff said he had proof, and did not wish a discovery; but that the sale might be enjoined until the validity of the deed could be tried at law. The court below instead of continuing the injunction to the sale by the trustee, till the lender had, by an action at law, given the plaintiff an opportunity to prove the usury, directed an issue to try the question, whether there was usury in the transaction ; the jury found, that the transaction was usurious, and the court below being of opinion, that the measure of relief consequent on the verdict, upon the authority of *Marks* v. *Morris,* was an annulment of the deed of

trust and a forfeiture by the defendants of the entire debt therefore, perpetuated the injunction. On appeal the court unceremoniously reversed this decree and held, that the proper measure of relief was a credit of the amount of the usurious premiums against the principal money due and legal interest; and that the deed of trust ought to stand as a security for the balance of the principal money and interest; and the payment should be enforced, if necessary, by a sale under the direction of the court of the property conveyed by the deed of trust.

This decree was concurred in by all the judges, who were present, Judges Allen, Baldwin, Daniel and Moncure. No opinion was given by any of them, nor is the argument of counsel reported. What is called the opinion of the court is delivered by Judge Baldwin; but it is only a brief statement of the conclusions of the court without the assignment of any reasons. It is obvious that they intended to overrule the case of *Marks* v. *Morris*.

If we confined ourselves to an examination of the syllabus of the case only, we might also conclude, that the court perhaps intended also to overrule the case of *Turpin* v. *Povall*, 8 Leigh 93, so far as it held, that on a bill for relief against a usurious debt unpaid, whether the usury be confessed in the answer or proved by witnesses, the plaintiff shall be relieved on the payment of the principal, justly due, without interest, and the opinion of a majority of the court in *Young* v. *Scott*, 4 Rand. 415. But a careful examination of the statement of the case, as made by the reporter, has led me to the conclusion, that the court did not mean to overrule these cases; but that in their judgment the case before them was, by the statement in the bill, taken out of the operation of those cases, and brought within the operation of the case of *Campbell* v. *Patterson*, 11 Leigh 113, where it was decided that the plaintiff might by his bill waive the forfeiture by the defendant of all the interest, by asking

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

only for the abatement of the usurious premium. In this case the reporter's statement shows, that the original bill asked that the trustee might be enjoined from selling under the deed of trust; that the deed might be declared usurious and void; or if not, that the plaintiff might at least be relieved from the payment of all over *the amount with its interest*, which he had received. To this bill, before it was filed, a clause was added, by which the complainant alleged, that he could prove all the allegations of the bill going to establish the usury charged therein, and he did not require a discovery of the usury from the defendants; and he asked for an injunction to restrain the sale of the trust property, until the validity of the deed should be tried at law. The reporter does not pretend to give the language of the bill; and as it is evident from his syllabus of the case, that his attention was not drawn to the point, whether the bill waived the forfeiture of all the interest, it is quite possible that the waiver may have been much more clear on the face of the bill, than this short synopsis of it would indicate. The prayer in the bill, that the deed might be declared usurious and void, does not indicate, that, a forfeiture of all the interest was insisted on; for even if the plaintiff had intended to waive all but the usurious premiums, still the court would properly declare the deed of trust null and void, as the statute expressly makes it so, but would have held the land liable for the payment of the debt really due as a condition, upon which a court of equity would give any aid to the plaintiff. It may be too, that the only question discussed before the court was, whether the whole debt should be forfeited, as the court below had decreed; and the court rendered the decree without considering the question, whether the relief should not be according to the 3d (now 7th) section of the usury statute; and the same may perhaps have been the case in the *Bank of Washington* v. *Arthur et al.*, 3 Gratt. 173. This case was elaborately argued, and the argument is reported at length, and a

long opinion was delivered by the court; but neither the counsel, nor the court, discuss the question, whether the relief to be given by the court was under the 3d (now 7th) section of the usury statute, or under the practice of the court of equity, independent of the statute. The court seems in that case to have assumed, that the facts stated in the bill did not bring the plaintiff's case within the 3d (now 7th) section of the usury statute. The great question involved in the case was, whether the prayer of the plaintiff's bill, that the trustee should be stayed from selling, till he had a day in the common law court to try the question of usury, which if granted would afford the plaintiff an opportunity of getting rid of the payment of the whole debt, principal and interest; and the court decided, that the plaintiff's prayer ought not to be granted. The reason assigned by the court being, that a portion of the bond secured, by the deed of trust, was for a *bona fide* debt, due prior to the giving of the bond and deed of trust, and which did not originate in a loan of money; and only a portion of the bond was for money lent at usurious interest; and if the prayer of the plaintiff's bill was granted, he would be afforded an opportunity at law, not only of avoiding the entire usurious debt, principal and interest, but also of destroying the security given for the *bona fide* portion of the debt included on the bond secured by the deed of trust, which would, they thought, be extending the principles of *Marks* *Morris* further than they had ever been carried. These reasons given for the decision of the principal point in the case, if sound, would also take the case upon the facts out of the operation of the 3d (or 7th) section of the usury statute, and would have justified the court in not giving the relief under that section, but in giving the relief only on the principles of a court of equity, independent of statutory law, that is: upon the payment of the principal and legal interest, avoiding only the usurious premium. This was the action of the court in that case. I feel therefore justified in concluding, that the

court neither in the case of *Washington* v. *Arthur et al.*, 3 Gratt. 73, nor in the case of *Bell et al* v. *Calhoun*, 8 Gratt. 22, intended to overrule the well considered case of *Turpin* v. *Povall*, 8 Leigh 93, to which the court in neither of these cases in any way referred.

The struggle in the court of appeals of Virginia over the principles, involved in the case of *Marks* v. *Morris*, has been most remarkable. The superior court of chancery for the Richmond district decided in 1809 against those principles. The court of appeals of Virginia, in *Marks* v. *Morris*, decided in 1812 in favor of those principles. The case of *Stone* v. *Ware & Smith*, 6 Munf. 541, while not professing to question those principles, was not regarded as consistent with them by the bar ; and one of the judges, who concurred in this decision, subsequently withdrew his concurrence. The same may be said of the case of *McPherin* v. *King et al.*, decided in 1822 ; and one of the judges, who concurred in the case of *Stone* v. *Ware & Smith*, in this case withdrew his concurrence. In *Martin* v. *Lindsay's adm'r*, 1 Leigh 499, decided in 1829, the court approved the decision of *Marks* v. *Morris*, though one of the judges dissented therefrom. In the case of *Fitzhugh* v. *Gordon*, 2 Leigh 626, decided in 1831, the court was equally divided on the question, whether *Marks* v. *Morris* was based on correct principles. In *Turpin* v. *Povall et al.*, 8 Leigh 93, decided in 1837, the court approved the principles decided in *Marks* v. *Morris*, as interpreted by them, though on one point one of the judges, who sat in *Marks* v. *Morris*, interpreted the principle decided in that case differently from the balance of the court. In *Thornton* v. *Gordon*, 2 Rob. 719, decided in 1849, the court, while not disapproving the case of *Marks* v. *Morris*, decided a principle apparently not altogether consistent with that case.

In the *Bank of Washington* v. *Arthur et al.* 3 Gratt. 173, decided in 1846, the court while expressly declining to say, whether the case of *Marks* v. *Morris* was good

law, but distinguishing the case before them from it, really decided principles inconsistent with those decided in *Marks* v. *Morris*; one judge who sat in that case dissenting; and finally in the case of *Bell et al.* v. *Calhoun*, 8 Gratt. 22, decided in 1851, the court unanimously overruled the case of *Marks* v. *Morris.* After a careful examination of all these cases, to use the language of Judge Carr in *Martin* v. *Lindsay's adm'r.* 1 Leigh 548, "I am firmly convinced, that *Marks* v *Morris* is not law, either taken generally, or restricted in its application to deeds of trust." I need not here assign my reasons for this conclusion, they will sufficiently appear from the opinons of the judges, who disapproved of that case, delivered in the cases above cited, a portion of which opinions have been quoted before.

The decided weight of judicial opinion in Virginia as well as reason is in opposition to the principles decided in *Marks* v. *Morris.* Judge Brooke, who sat in that case, always adhered to the decision; Judge Roane, who also sat in the case and approved this decision, doubted, whether the principles involved in it were in all respects those, which Judge Brooke regarded as decided by it. See *McPherin* v. *King* &c. 1 Rand. 189. Judge Coalter, the only remaining judge, who decided *Marks* v. *Morris*, in the case of *McPherin* v. *King* &c., 1 Rand. 179, expressed himself not satisfied with some of the principles supposed to be involved in *Marks* v. *Morris*, stated that he was satisfied with the decision if it was confined to cases of deeds of trust, but if to be extended any further, he did not hold it to be law. Judge Tucker approved of the decision of *Marks* v. *Morris*, but thought, that perhaps the court in that case went too far in interpreting the bill, to come within what they considered the true principle involved in that case; he also thought the measure of relief, where the case did not come within the principles of that case, was different from what Judge Brooke thought, on the principles of that case, was the true measure of relief. See *Turpin* v. *Povall et al.* 8 Leigh 108. Judge Cabell con-

1877.
Special Term.

Davis, committee,
v.
Demming *et al.*

curred in this opinion at that time; but he subsequently changed his opinion, concurring with the court in its decision in *Thornton* v. *Gordon*, which was inconsistent with Judge Tucker's views in respect to the right of a party to waive a discovery by the defendant, and thus deprive him of a right to answer, and have the usual right of answer attached to it; and he finally concurred in the decision of the court, in the *Bank of Washington* v. *Arthur et at.* 3 Gratt. 184, which was inconsistent with all the principles of the case of *Marks* v. *Morris*. Judge Brockenbrough in *Turpin* v. *Povall,* 8 Leigh 97, expressed no opinion of the merits of the case of *Marks* v. *Morris*, regarding it, whether right or wrong, as settling the law.   On the other hand, Chancellor Taylor in *Marks* v. *Morris*, 4 H & M. 463, and Judges Carr and Green, in *Young* v. *Scott*, 4 Rand. 416 ; *Martin* v. *Lindsay's adm'r*, 1 Leigh 548, and *Fitzhugh* v. *Gordon*, 2 Leigh 627, disapproved entirely of the principles decided in *Marks* v. *Morris*, and so subsequently did Judges Baldwin, Allen, Daniels and Moncure, in *Bank of Washington* v. *Arthur*, 3 Gratt. 184, and *Bell* v. *Calhoun*, 8 Gratt. 25.

Elsewhere than in Virginia, so far as I have been able to ascertain, the principles of *Marks* v. *Morris* have been constantly repudiated ; thus on a bill for an injunction to prevent the sale of property by a trustee, to whom it had been conveyed to secure the payment of a sum of money borrowed at usurious interest, the plaintiff alleged his ability to prove the usury by competent testimony, and asked no discovery of the defendant, and he prayed for an injunction to prevent the sale, until the question of usury should be decided at law.   The Supreme Court of the United States held unanimously, that this was an indirect mode of asking for relief from the usury on terms different from that, on which a court of equity grants such relief; and the bill should be dismissed.   See *Stanley* v. *Gadsby*, 10 Peters 521.

The same principle was held in the case of *Fanning* v. *Durham,* 5 John. Ch. 145 ; where it was said to be appli-

1877.
Special Term.

Davis, committee,
v.
Demming *et al.*

cable to a case of a mortgage taken to secure a usurious loan, the mortgage having in it a power to sell, so that the creditor could foreclose his mortgage witl out calling upon the court to assist him. I conclude, that except where expressly directed so to do by statute, a court of equity will never on the application of a borrower furnish him any aid to enforce against a lender of money at usurious interest the forfeiture of the whole debt, whether the aid sought be asked directly of the court or only indirectly, by enjoining the lender from enforcing his demand by acts *in pais*, till he has afforded the borrower an opportunity to defend himself at law; nor can the borrower obtain such aid by alleging and showing, that the usurer has so managed as to put his assurance for the money loaned in a form, that it may be enforced without applying to any court; nor will the allegation of the borrower, that he is full handed to prove the usury, and asks no discovery of the lender, alter the case. A court of equity in no case, except when directed by statute law, will aid either directly or indirectly, in enforcing the forfeiture of the principal sum lent, upon the application of the borrower.

The cases also of *Young* v. *Scott et al.*, 4 Rand. 415, followed by *Turpin* v. *Povall et al.*, 8 Leigh 93, established the law in Virginia under the usury statute to be, that on a bill in equity for relief against a usurious debt unpaid, whether the usury be confessed in the answer, or proved by evidence, the plaintiff shall be relieved on the payment of the principal justly due, without any interest; and that to entitle the plaintiff to such relief, he is not required to tender the principal in his bill, or express his willingness to pay it, nor to waive any forfeitures expressly in his bill; and the defendant, if the usury is established, can defeat the forfeiture of the entire interest only by showing, that the plaintiff by his bill has expressly, or by necessary implication, waived his right to require the forfeiture of all the interest, and has in his bill expressed his willingness to have only the usurious premium abated (See *Campbells* v. *Patterson*, 11 Leigh 113);

Syllabus 2.

or by showing that the facts, alleged by the plaintiff, do not entitle him to any relief under the 7th section of ch. 141, of the Code of 1860, in which cases the borrower will be relieved upon the payment of the principal and legal interest justly due (See *Bank of Washington* v. *Arthur* &c., 3 Gratt. 173); and in no case is it necessary, in order that the plaintiff may have the relief afforded by said 7th section, by the special prayer of his bill or by the general frame of it to show, that he asks relief under its provisions. Such relief will be furnished, as the facts stated in his bill show him to be entitled to, unless he waives a portion of his rights expressly, or by fair implication, even though his prayer be not consistent with his rights; and that too where the bill does not even contain a prayer for general relief. See *Bank of Washington* v. *Arthur*, &c., 3 Gratt. 173. When the debt and usurious interest have been paid, the provisions of said 7th section of the Code of 1860, ch. 141, do not apply; and the measure of relief, as settled by the Virginia decisions, is the excess of the amount paid over the principal and legal interest with interest on such excess, or in other words, the usurious premium paid and interest thereon from the time of payment. See *Spengler* v. *Snapp*, 5 Leigh 478; *Clarkson's adm'r.* v. *Garland*, 1 Leigh 162. Such being the law of Virginia, the Legislature of Virginia passed the 10th section of ch. 141, above quoted.

Syllabus 1.    In 1866 this provision came before the Court of Appeals of Virginia, for construction in the case of *Brockenbrough's ex'ors* v. *Spindle's adm'rs*, 17 Gratt. 21. The court decided, that where the borrower is entitled to relief under this section of the statute, he is to be relieved from the whole debt, both principal and interest, and not merely from the usurious excess; that a bill under this section may be filed against the representatives of the lender after his death; that the issue directed by this section is the sole object, and not an incident of the suit, its purpose being, not to inform the conscience of the

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

court, but to conclude the question of fact ; and that the court is bound to decree in accordance with the verdict, unless for good cause shown a new trial is granted. With these conclusions of the court I entirely concur for the reasons assigned by Judge Moncure in his opinion ; but in his opinion he expressed views, which are inserted in the syllabus of the case, in which I cannot concur without at least qualifying them, that is, that this section was designed to adopt the principles of the case of *Marks* v. *Morris*, 2 Munf. 407. This section cannot be regarded as establishing a rule for construing ch. 141, of the Code of 1860. It ought not to be regarded as laying down a rule, by which our usury statute should be construed, or as in any way affecting the construction of the 7th section of the act; but it should be regarded as a new section of the law not in harmony with the statute law as it then existed, or with the general principles of a court of equity ; and it ought therefore to be interpreted as applicable only to the case, for which it specially provides. It ought not therefore to be extended to other cases, which might be supposed analogous to the case provided for by this section. By its language it is expressly confined to the case of a usurious debt secured by a deed of trust ; and it ought to be applied to no other case. What principles were involved in the case of *Marks* v. *Morris*, has been, as we have seen, a constant subject of controversy among the judges, who approved that decision. It is fair to infer, that Judge Brooke thought the principles involved in that case, extended to any case, in which by the form of the security the borrower was deprived of a day in court, or could only have such day by running great risk of heavy loss; but most of the judges, who approved this case, understood its principles were to be applied to no other case than a deed of trust, as appears from their views given above ; even Judge Brooke did not, I infer, consider the principles of *Marks* v. *Morris*, as applicable to a case of a usurious debt secured by a mortgage. See his opinion in

*Martin* v. *Lindsay's adm'r*, 1 Leigh 514. I cannot believe that it was the purpose of the Legislature in adopting this 10th section, to open again the almost endless controversies about what where the principles involved in the case of *Marks* v. *Morris*, or that they intended this section to apply to any case, .except that of a usurious debt secured by a deed of trust; such is the plain meaning of its language; and such, I think, was obviously its purpose.

Another important question of law necessary to be considered in deciding this case on its merits is, what constitutes a mortgage of land, and what a sale of land with a right by the vendor to repurchase the land at a future day at a fixed price. A mortgage of lands is a conveyance of lands by a debtor to a creditor, as the security for the performance of a covenant the payment of a debt, or the repayment of a sum of money borrowed with a proviso, that such conveyance shall be void, on the performance of the covenant by the time appointed, or the payment of the debt or money borrowed, and interest on a certain day. If this be not done, the conveyance becomes absolute at law, yet the mortgagor has an equity of redemption, that is, a right in equity on the performance of the agreement in a reasonable time to call for a reconveyance of the land. The usual form of a mortgage is by a single deed, which contains the whole contract; but it frequently is put in the form of two deeds, one an absolute conveyance executed by the mortgagor, the other a defeasance executed at the same time by the mortgagee. The last mode is as effectual to create a mortgage as the first. See *Brown* v. *Dean & Ensworth*, 3 Wend. 208. The usual mode of drawing a mortgage, whether it be in one deed, or in a deed and defeasance separately, is to insert a clause, that if the debt is paid or covenants performed by a given day, the deed shall be void, but the deed or deed and defeasance is just as effectual as a mortgage, though instead of such a proviso there is a covenant by the mortgagee in the deed,

1877.
Special Term.

Davis, committee,
v.
Demming et al.

or defeasance, that he will reconvey the land to the grantor in the deed, if the debt is paid, or the covenant performed by a given time. See *Erskine* v. *Townsend*, 2 Mass. 497. Such a form of mortgage is given in the form-books. See Woods's Conveyancer. It is usual for the mortgagor to oblige himself by the deed to pay the debt or repay the money borrowed; but the omission to insert such an obligation in the deed, or to execute any collateral personal obligation to pay the debt, will not in any way vitiate the deed or deeds and defeasance as a mortgage, or convert the defeasance into a conditional sale, because there was no such personal obligation, but only a covenant by the grantor to reconvey on the payment of the debt at a given time. See *Rice et al.* v. *Rice*, 4 Pick. 349. But while the relation of the mortgagor and mortgagee to each other, as that of debtor and creditor, need not appear on the face of the mortgage deed or deed of defeasance, or in any other paper executed by the parties, and though it will, in the absence of proof from the mortgage being executed in any of the above forms, be presumed to exist, yet the apparent mortgagee may prove by parol or otherwise, that this relation of debtor and creditor did not in point of fact exist between the parties, and that his deed covenanting to reconvey the land, if a certain sum was paid by a given day, was really a conditional sale by him of the land to the original owner. See *Conway's ex'ors* v *Allexander*, 7 Cranch 237.

A conditional sale with a right to repurchase very nearly resembles a mortgage. The distinction is, that if the money advanced is not loaned, but the grantor has a right to refund it in a given time and have a reconveyance, if the debt remains, the transaction is a mortgage, otherwise not. See *Robinson* v. *Cropsey et al.*, 2 Edw. Ch. 137; *Slee* v. *Manhattan Co.*, 1 Paiges Ch. 56; *Hicks* v. *Hicks & Morris*, 5 Gill & J. 75. In case of doubt however, a court of equity will always lean in favor of a mortgage rather than a conditional sale. *Conway's ex'or* v. *Alexander*, 7

Cranch 237. Parol evidence, the declarations and conduct of the parties at the time of the transaction or subsequently, as well as all the circumstances attending or surrounding the same are received to show, whether the transaction was a conditional sale, or mortgage; and this is done though the deed, or bill of sale be absolute on its face. *Robertson* v. *Campbell*, 2 Call. 354; *King* v. *Newman*, 2 Munf. 40; *Lamb* v. *Shears*, 1 Wend. 437; *Horner* v. *Kiteltas*, 46 N. Y. 605. If there be no evidence other than the papers executed, to show directly, what was the intention of the parties at the time of the transaction, the following circumstances are regarded as having great weight in determining whether the transaction was conditional or absolute sale, or mortgage. If the alleged price given for the property was a reasonable price, it is a circumstance tending to show, that it was a sale and purchase at a price fixed by the parties at the time; if however the price is grossly inadequate, it raises a strong presumption that the real understanding of the parties was, that the vendor should have a right to redeem, and that the transaction was really a mortgage. The fact, that by the papers executed no such right exists, will be considered a matter of no importance, if it is shown by proof or surrounding circumstances, that a security or pledge for a debt was intended; for a party is never allowed to take from his debtor by any form of contract his right to redeem. See *Chapman* v. *Turner*, 1 Call. 280; *Thompson* v. *Davenport*, 1 Wash. 128; *Pennington* v. *Handy et al.*, 4 Munf, 140; *Scott* v. *Britton*, 2 Yerg 215; *Bennet* v. *Holt*, 2 Yerg 6; *King* v. *Newman*, 2 Munf. 40; *Holdridge* v. *Gillespie*, 2 John. Ch. 30; *Clarke* v. *Cowan*, 2 Cow. 325, *Horn* v. *Keteltas*, 46 N. Y. 605. If the vendor remains in the possession of the property after the alleged sale, this is a circumstance that tends to show, that it was not really a sale, but a mortgage, for such continuing possession in the vendor after a sale, if not inconsistent with a sale, is an unusual accompaniment of it. *Ross* v. *Norvell*, 1 Wash. 40;

1877.
Special Term.

Davis, committee,
v.
Demming *et al.*

*Thompson* v. *Davenport*, 1 Wash. 125; *Bennet* v. *Holt*, 2 Yerg. 6. The circumstance, that there were negotiations pending for a loan, or the admission by the grantee, that he loaned the money to the grantor, is a strong circumstance to show, that the real transaction was a mortgage, and not a conditional sale. *Horn* v. *Keteltas*, 46 N. Y. 605; *Fielder* v. *Darrin*, 50 N. Y. 438; *King* v. *Newman*, 2 Munf. 40; *Robertson* v. *Campbell & Wheeler*, 2 Call 354.

I shall now apply the law to the facts in this case; and first: What were the facts relative to the sale or mortgage of the land by the complainant, William H. Woodyard, to the defendant, Charles T. Demming? The record shows that Woodyard owed Cook about $2,000.00, for securing which he had given a deed of trust on his land; that in May 1867 Cook demanded payment of this debt and threatened to have the land sold if it was not paid; and it being about to be so sold, he obtained from defendant, Demming, $2,000.00, wherewith said debt of Cook's was paid off; and Woodyard and his wife, thereupon on June 10, 1867, executed to Demming a deed absolute on its face and with general warranty of title, conveying four tracts in Wood county, West Virginia, containing respectively, two hunderd and sixteen and three-fourth acres, thirty-three acres, forty-four and a half acres, and ten acres; and at the same time Demming entered into a written contract, which on its face purports to sell said four tracts of land to Woodyard, for which he is to pay $2,500,00 on June 10, 1868, and then adds; but it was understood that this agreement was conditional, and if Woodyard failed to pay the $2,500.00 on June 10, 1868, this agreement was to be void, and Woodyard was then to deliver possession of the lands to Demming. But upon the payment of said sum at the time specified, Demming was to reconvey the land to Woodyard with special warranty. Woodyard in the bill states, that this transaction was a loan of the money to him by Demming, at usurious in-

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

terest. Demming denies this in his answer, and claims that his purchase of the land was an absolute purchase, for which he paid $2,000.00 cash, and at same time agreed to re-sell the land to him for $2,500.00 in cash, if the same was paid at the end of one year.

The proof establishes that Woodyard was an ignorant and very weak man, if not an absolute fool; no persons were present so far as the proof shows, when his contract was made. The evidence shows, that these lands were at that time worth not less than $4,000.00. Woodyard at one time by an agent sold these lands for $5,500.00 ; but he refused to ratify the sale, being, as this agent testifies, rather insane on the subject of minerals. One witness testifies, that Demming told him, that he had let Woodyard have the money, that he did not want the farm, all he wanted was his money back, and he hoped Woodyard would redeem his farm. Another witness says, that he went to Demming to inquire about getting some money for Woodyard, but did not himself make the arrangement; Demming told witness, he had loaned Wooyward the money or let him have it, he does not know which; he said he did not tell witness, what interest he charged Woodyard. In the same conversation he thinks that Demming told him, that Woodyard had deeded him his lands. The circuit court on this state of facts held, that this was a conditional sale. It seems to me obviously a mortgage. The application, made by Woodyard, was to borrow money, not to sell his lands. The lands were worth at least twice as much as the money he wanted to borrow. Demming at the time spoke of Woodyard getting money of him, or of his lending him, the two meaning the same thing under the circumstances; and while he speaks of Woodyard having deeded him the lands, as he did, he does not say that he had purchased them. He afterwards told another witness, he had let Woodyard have the $2,000.00 at six per cent interest, and he hoped Woodyard would redeem his farm, as he did not want it. The land was

1877.
Special Term.

Davis, committee,
v.
Demming et al.

worth more than twice as much money as Demming let Woodyard have. The possession of the land by the terms of the contract was to remain with Woodyard. There are in fact the strongest indications, that the land was merely a pledge to secure the return of the money loaned and $500.00 added to it for the use of this $2,000.00 for one year.

There is nothing whatever in the case to indicate a sale of the land, unless we regard the papers executed at the time as so doing; and it seems to me, very questionable, whether in the absence of all evidence these papers on their face do not show, that the transaction was a mortgage. The defeasance was executed at the same time that the deed was, and constitutes therefore a part of the same. The obligation by Demming to reconvey to Woodyard is, as we have seen entirely equivalent to the usual conditions in a mortgage deed, that if debt is not paid at maturity, the deed should be void. The defeasance on its face shows, that the grantor in the deed was to remain in possession of the lands paying no rents. It seems to me, that if any evidence beyond these papers were necessary to establish this to be a mortgage to secure a usurious debt, such evidence would have to be very slight, and that the evidence in this case is ample for that purpose. The probable purpose of Demming, in not putting the papers in the usual form of a mortgage, was not to offer to him the opportunity of claiming the lands, as he admitted to one witness Woodyard's right to redeem the land, but merely to cover up the usury in the transaction; but the cover is entirely too thin to conceal it, in my judgment. The question, whether the transactions between Burdett and Sharp and Woodyard amounted to a conditional sale, or mortgage of these lands, seems to involve still less difficulty. The time having arrived when, by the contract between Woodyard and Demming, possession of the lands was to be surrendered to Demming, Woodyard applied to them to let him have

$2,500.00 to pay Demming. This they did, taking a deed from Demming and wife and Woodyard, which reciting the defeasance before stated between Demming and Woodyard dated the 10th of June 1867, and the fact that the time, in which Woodyard was to pay Demming the $2,500.00, had expired, and that Burdett and Sharp had paid to Demming at Woodyard's request the $2,500.00 in consideration thereof, said grantors in said deed conveyed to Burdett and Sharp, with general warranty on the part of Woodyard, and special warranty on the part of Demming, said four tracts of land. This deed is dated June 10, 1868; and at same time Burdett and Sharp executed to Woodyard an agreement, whereby they agreed to sell to said Woodyard said four tracts of land, for which he was to pay them $3,000.00 on September 10, 1868. But it was agreed, that this contract was to be void, if this $3,000.00 was not paid on September 10, 1868, and Woodyard was then to deliver them possession of these lands; but if the $3,000.00 was paid them on September 10, 1868, they were to convey said lands to Woodyard, with special warranty of title.

This transaction is also stated in the bill as a loan of the $2,500.00 for three months, $500.00 to be paid for the use of the money; and that it was secured by a mortgage on said lands. The answers of Burdett and Sharp deny this statement, and allege, that there was never any proposition made by Woodyard to borrow money of them, but that he earnestly solicited them to buy said land at the price of $2,500.00; but both of them say, that they have always been willing, and still are, to receive of said Woodyard the $2,500.00 and the interest thereon, and to reconvey said lands to him; that they always told him so, and he expressed himself satisfied, but never repaid any of the money. The testimony proves, that shortly before the deed to Sharp and Burdett was made, Sharp told one witness, that he would lend Woodyard at such a per cent, that he would never get his lands back. After he had examined the papers between Wood-

yard and Demming, he said it was as good a deed as he wanted; and he would lend Woodyard money on it, meaning, as I understand, on a similar deed; and he intended to let him have enough, so that he never would redeem it, as he had no sense anyhow, or he would have sold it for what he had been offered (alluding I suppose to the offer $5,500.00 for the land which Woodyard had refused), and that he, Sharp, had as well have the land as strangers. Shortly after the money was advanced he told witness, that he had let Woodyard have the money on a short time, so that he could not redeem the land as he, Sharp, had better have the land than a stranger.

Another witness testifies, that in 1869 at Woodyard's request he told Sharp, that he, Woodyard, had made an arrangment, by which he would pay him back in two days his money. He replied: "Damn Billy Woodyard and his money too, I don't want his money, I took hold of that place with the intention of keeping it from him, and by God I will do it." At another time he said, he intended to throw him out of the house and take possession. He told another witness, he had loaned Woodyard the money, and when this witness told him, Woodyard would pay it shortly, he replied, that he had bought the farm and intended to hold it. This evidence, as well as the answers of Burdett and Sharp, seems to show clearly, that the transaction between Sharp and Burdett and Woodyard was unquestionably a loan of $2,500.00 to be paid in three months, with $500.00 interest for the use of the money for that time. The papers executed by the parties strongly indicates the same, as I have before shown. Sharp does not seem to have thought it necessary to conceal the fact, that it was a loan, but seems to have thought, that the court would not permit the land to be redeemed after the day named in the defeasance, and that too, though the real transaction was a loan of money secured by a lien on land, as the form into which the transaction had been put,

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

was that of an absolute deed and a contract to reconvey, if the money was paid back in three months. In this as we have seen, he utterly mistook the law, for the right of redemption can never be lost or taken away, once a mortgage always a mortgage, being a well established maxim.

The final decree of the circuit court pronouncing these transactions not to be mortgages, and dissolving the injunction awarded in the cause, and dismissing the bill at the plaintiff's cost is erroneous; as is also the previous decree of October 3, 1871, deciding, that that case was provided for by the 10th section of ch. 141 Code of 1860, and under it ordering an issue to be tried by a jury. We have seen, that this section is confined to cases of usurious loans secured by deeds of trust, and has no application to such loans secured by mortgages; and therefore had no application to the present case; and the decree of May 17, 1871, so far as it declares these transactions to amount to mortgages, and that the plaintiff has the right of redemption, is correct, though it too is erroneous in some of its details, as we shall presently see.

The two decrees above mentioned declared to be erroneous, are objected to as improperly rendered for another reason. The court having by its decree of May 17, 1871, settled in part the principles of this cause, the court it is insisted had no power afterwards, to render decrees in effect reversing the decree of May 17, 1871, and instead enter up decrees based on entirely different views of the rights of the parties, without re-hearing the first decree on a regular petition for a re-hearing. It is a general rule, that after the close of the term of the court, in which a decree is rendered, settling any of the principles of a cause, though such decree be interlocutory, the court cannot set aside of disregard such decree, unless it is done upon a petition for a re-hearing. See *Fanning* v. *Dunham*, 4 John. Ch. 35; *Rudley* v. *Shaver*, 1 John. Ch. 200. Whether there be any exceptions to this general rule need not now be decided.

The measure of relief in this case, if the views I have ex-

Syllabus 9.

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

pressed in this opinion are correct, is obvious. The complainant is entitled to recover of Demming the surplus, which he has paid over and above the money lent by him and interest thereon from the time he received it, that is the sum of $380.00 and interest thereon from June 10, 1868, till paid. See *Spengler* v. *Snapp*, 5 Leigh 478; and *Clarkson's adm'r* v. *Garland*, 1 Leigh 147. This amount is ascertained on the supposition, that he advanced to Woodyard on June 10, 1867, $2,000.00, and was repaid on June 10, 1868, $2.500.00; and this is stated to be the amount paid and received by him in the bill and answer, and in the deed made to him and the defeasance signed by him. It is true, the amount received by Woodyard is stated in the decree of May 17, 1871, to be $1,920.00; but so far as I can see, there is absolutely nothing in the record to justify this statement. The complainant is entitled, upon the principles I have laid down, to be relieved from the payment of any interest to Burdett and Sharp, but must pay them the principal money received by him of them, that is $2,500.00; and if not paid in a reasonable time, the court should order the four tracts of land conveyed by Burdett and Sharp, or so much thereof as is necessary, to be sold for the payment thereof. See *Turpin* v. *Povall et al.*, 8 Leigh 93; *Young* v. *Scott*, 4 Rand. 415.

There remains only to be considered some questions relative to the pleadings in the case. It is insisted by the appellees, that though the facts proven in the case and alleged in the bill might entitle the party to be relieved from all interest, had he filed his bill claiming the benefit of the 7th section of ch. 141 of the Code of 1860, yet in point of fact he has not done so. It is insisted, that to obtain the relief given by that section, the bill must not only state facts sufficient to entitle him to this relief, but it must state, that these facts are known to the defendants, and ask, that the facts be disclosed by him on oath; but the plaintiff must go further and state, that the plaintiff is unable to prove

1877.
Special Term.

Davis, commit-
tee,
v.
Demming et al.

such facts by any other testimony. In other words that the bill must in this respect be like a pure bill of discovery, and subject to the acknowledged rules of chancery pleadings in such cases. And secondly, that the plaintiff in his bill, in order to get the relief provided for in said 7th section, must make tender or offer to pay the defendants, what is really due them ; and otherwise the defendants may demur to the bill and have it dismissed. And the appellee's counsel refer as supporting this proposition to *Marks* v. *Morris*, 2 Munf. 407 ; and *McPherin* v. *King*, 1 Rand. 172.

It is true that while views of this character are expressed *Marks* v. *Morris* in the opinion of the court delivered in by Judge Roane, yet it was perhaps unnecessary in that case, that such views should have been expressed, as the plaintiff in that case was not claiming the benefit of this 7th section. In the case of *McPherin* v. *King*, Judge Roane expressed the same opinion ; and Judge Brooke, while he said nothing on the subject, doubtless assented to the decision, because he entertained those views, as is shown by his opinions in other cases. Judge Coalter however in his opinion, repudiates the idea, that to get the benefit of the relief provided for by this 7th section it was necessary to allege in the bill that the usury could only be shown by the discovery of the defendants in their answer ; but says, that this relief would be given, though denied by the answer, if the usury was proven by other testimony ; and only these three judges sat in the case.

In the case of *Young* v. *Scott et al.*, 4 Rand. 421, Judges Green and Carr, in their opinions expressly say, that though the bill states expressly, that the usury can be established without any discovery from the defendants, the plaintiff would be entitled to the relief provided in said 7th section, and while Judge Cabell expresses no opinion on that point, he concurred with Judges Green and Carr, in giving the measure of relief provided for in the 7th section, that is a remission

1877.
Special Term.
Davis, committee,
v.
Demming *et al.*

of all interest.  In that case the bill did not allege, that the usury could only be proven by the discovery of the defendants in their answer; and it may therefore be regarded as a unanimous decision of the court, that a bill entitling the plaintiff to relief, by a remission of all the interest under this 7th section, need not be framed as a pure bill of discovery; and to this extent it overrules the cases of *Marks* v. *Morris* and *McPherin* v. *King,* 1 Rand. 172, so far as they go to sustain this position. And in the case of *Turpin* v. *Povall,* 8 Leigh 93, the bill neither tendered the principal money, nor offered to pay it, nor stated, that the usury could only be shown by defendant's answer; and in a full court of four judges it was decided, that such a bill was sufficient to entitle the plaintiff, if his case was proven, to be relieved from all the interest under the provision of this 7th section. Judge Brooke alone dissented from this decision; and, as we have before seen, this decision has not been since questioned in Virginia.  So I conclude, that whatever may be the law elsewhere, in Virginia and in this State, a complainant need not allege in his bill, that he can only prove the usury by the defendant's answer; nor need he offer or tender to pay the principal, in order under this 7th section to be relieved from the payment of all interest.

It is also insisted by the appellees, that as the bill on its face shows distinctly, that relief is not sought under the 7th section, but only under the 10th section, and the plaintiffs are entitled to no relief under the 10th section, that the court ought under this bill to grant no relief, but should have dismissed it on demurrer.  This objection though plausible is not sound.  The amended and supplemental bill in this case "prays for full and general relief in the premises, such as the nature of their case requires."  Such prayer would on the principles of chancery practice entitle the court to render such relief, as the facts stated in the bill show, that the plaintiff is entitled to, though it be different from that asked specifically in his

1877.
Special Term.
_____
Davis, commit-
tee,
v.
Demming et al.

prayer. And indeed in the case of *Bank of Washington* v. *Arthur*, 3 Gratt. 173, though the bill only prayed for such general relief, as was consistent with the special relief asked, which was an injunction to the sale of his property, till a trial could be had at law of the question of usury, yet the court, though it did not think the plaintiff entitled to this special relief, which his bill was framed to attain, nevertheless proceeded to give such relief, as the facts stated in the bill and proved justified, though such relief was inconsistent with the special relief prayed for in the bill.

Upon the general principles of chancery pleadings as well as this authority I think, the court can and ought also in this cause to give the plaintiff such relief against Demming, as we have shown he was entitled to on the facts stated in the bill, though no such relief is specifically asked for. The lapse of time in no measure hinders the court granting such relief, as this suit was brought in less than a year after Demming received the usurious premium, which we think he should be required to refund. The plaintiff had a right to institute this suit in chancery to have the deeds made by him declared null and void, and for the relief, which we have shown he was entitled to ; but by becoming the plaintiff in a suit in equity he forfeited his right to demand a forfeiture of the entire debt, or to have the deeds nullified, except upon the condition, that he should pay the principal sum borrowed, and have his lands subjected to the payment thereof. Had he wished to have the deeds avoided, without imposing upon himself any obligation to pay any portion of the money he had borrowed, he should have retained possession of his lands, and when the defendants undertook to eject him by suit, he could have defended the suit, and if he had proved, as he has done in this suit, that the agreements, under which these deeds were executed, were tainted with usury, they would, under the 5th section of chapter 141 of the Code of 1860, have been held void, and he must have retained his lands, and a suit at law for the money loaned, if met

1877.
Special Term.
————
Davis, committee,
v.
Demming *et al.*

by the plea of usury, if proved as it has been in this case, would have been decided in his favor. To obtain therefore the possession of his lands and a forfeiture of the entire debt, he needed no aid of a court of equity; and such aid the court of chancery never gives, unless the statute expressly so directs, which it does not in this case, the 10th section of chapter 141 not applying. The mere fact, that the court of law gave to the plaintiff a perfectly adequate and simple remedy, whereby he could have held his lands, and not had to pay any of the money borrowed shows to my mind clearly, that the 10th section of chapter 141 was never intended to reach such cases, but that it was confined to the case of the deed of trust, when the remedy at law was neither simple, or safe.

Another point has been discussed, which I deem unnecessary to decide, that is, whether on the motion of appellant the court ought, under the circumstances stated in the affidavits filed, have continued the case at the term at which the final decree was entered to give the plaintiff an opportunity to prove the statements of his bill by other testimony. I have said, that the case stated in the bill is in my judgment fully proven by the evidence now in the records; and of course the plaintiff sustained no injury from the court refusing to give him further time to prove his case.

I am therefore of opinion, that the decrees of October 3, 1871 and July 10, 1874, must be reversed and annulled; and this court must affirm so much of the decree of May 17, 1871, as adjudged, that the deed executed by said Woodyard and wife to said Demming bearing date June 10, 1867, for the conveyance of the lands in the bill mentioned, and the contract permitting Woodyard to repurchase said land at a future date at an increase of the price of $500.00, which contract was executed on the same day as the date of the deed, and the said deed executed by said Woodyard and wife and Demming and wife to said defendants, Sharp and Burdett, for the conveyance of the said lands,

bearing date the 10th day of June 1868, in the bill mentioned, together with the contract under seal bearing the same date as the last mentioned deed, permitting said Woodyard to repurchase said land within ninety days at an increase of price of $500.00, constitute two several conditional sales, with the privilege to redeem to the said Woodyard, or two several mortgages of said two several dates, ʿand that they were executed to secure the payment of money lent by the said defendant to the said Woodyard, at the date of said deeds, at a greater rate of interest than that allowed by law, to-wit : at a greater rate than six per cent. per annum ; and that said two several deeds were made for the purpose of evading the law respecting usury, and that the transactions they relate to are tainted with usury ; and reverse must and annul the residue of said decree, with costs to the appellants against the appellees.  And this Court must render such decree, as the court below ought to have done, and adjudge, order and decree, that said Woodyard had a right to redeem said lands, in his bill mentioned, so conveyed to the defendants, on the repayment of the $2,500.00 actually received by him of the defendants, Burdett and Sharp, without any interest on the same ; and that all of said deeds and defeasances executed to or by the defendants, or any of them, should be declared null and void, because tainted with usury, except only, that the same should stand as a security for the repayment of said $2,500.00 by the said Woodyard, or his said committee, to the said defendants, Burdett and Sharp, within sixty days from this day.  And if the said Woodyard or said John W. Davis, his committee, or some one else for him, should not within sixty days from this day pay to the said Burdett and Sharp the said $2,500.00 advanced by them, that the said lands, or so much of them as shall be necessary for this purpose, should be sold to pay said $2,500.00 with interest thereon from sixty days from this day, when said money should be repaid.  And William H. Small and John A.

Hutchinson should be appointed commissioners, whose duty it should be to sell said lands, or so much thereof as they deem necessary for this purpose, at public auction to the highest bidder, before the court house door of Wood county, in Parkersburg, upon the terms of one-third in cash, and the balance in two equal installments, payable in nine and eighteen months from the day of sale, with interest from the day of sale, to be secured by the bonds of the purchasers and a retention of the legal title, till all the purchase money be paid, after advertising the time and place and terms of sale for four weeks in some newspaper published in Wood county, and by posting a notice thereof on the front door of the said court-house for at least three weeks before the day of sale. But before said commissioners, or either of them, should receive any of the purchase money, he or they should give bond with good security, approved by the clerk of the circuit court of Wood county, in the penalty of $5,000.00, conditioned to faithfully discharge the duties as such commissioners and pay over, as ordered by the court, all moneys received or to be received by them or either of them. And they should be required to report their proceedings herein to the circuit court of Wood county in order to a final decree. And this court should further adjudge, order and decree, that Charles T. Demming do pay to the general receiver of the circuit court of Wood county, for the use of Wm. H. Woodyard, the sum of $380.00 with interest thereon from the 10th day of June 1868, that being the amount of the usurious premium received by him; and authority should be given to issue execution therefor.

And this cause should be remanded to the circuit court of Wood county to be proceeded with according to the written opinion herewith filed, and the rules governing courts of equity and with instructions to enforce the payment to Burdett and Sharp of said $2,500.00, with interest thereon from sixty days from this date; and in final decree to give the costs to the plaintiff in this cause against the defendants,

*1877.*
*Special Term.*

Davis, commit-
tee,
v.
Demming *et al.*

Demming, Sharp and Burdett, other than the costs of the enforcement of the payment of said $2,500.00.

JUDGES HAYMOND and MOORE concurred.

Absent, JUDGE JOHNSON, who was counsel in the cause below.

CAUSE REMANDED.